Jimmie L. Williams, State Bar No. 144691
jimmie@jwatlaw.com
LAW OFFICES OF JIMMIE L. WILLIAMS
141 Alamo Ranch Road
Alamo, California 94507-2031
Telephone:     (510) 282-7155
Facsimile:     (510) 925-2887

Aaron M. McKown, State Bar No. 208781
aaron@mckownbailey.com
McKown Bailey
620 Newport Center Dr., Suite 690
Newport Beach, CA 92660-8057
Telephone:     (949) 858-3200

Attorneys for Plaintiffs,
ABN CORPORATION and RS MEDICAL SUPPLY, LLC

UNITED STATES DISCTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABN CORPORATION, a Wyoming corporation, RS MEDICAL SUPPLY, LLC, a Nevada Limited Liability company,<br><br>Plaintiffs,<br><br>v.<br><br>GROUPE PELM INTERNATIONAL CORPORATION, a foreign corporation, CHRISTIAN PELLEGRINI, an individual, LAW OFFICE OF VICTORIA E. BRIEANT, P.A., a Florida corporation, VICTORIA E. BRIEANT, an individual,<br><br>Defendants. | Case No. STK-CV-UBC-2019-6242<br><br>**PLAINTIFFS COMPLAINT FOR:**<br><br>1. **Fraud**<br>2. **Conversion**<br>3. **Conspiracy to Commit Fraud**<br>4. **Tortious Interference with Contract**<br>5. **Tortious Interference with Prospective Business Advantage**<br>6. **Negligent Misrepresentation** |

Plaintiffs, ABN CORPORATION and RS MEDICAL SUPPLY, LLC, complains and alleges as follows:

## I.     NATURE OF THE CASE

1.     This action arises out of the Defendants conversion of a financial deposit made by the Plaintiffs to Defendants for the purpose of purchasing personal protective equipment.

2.     On November 9, 2022, Defendants Groupe Pelm International Corporation,

(hereinafter "GP") through its CEO/President, Christian Pellegrini, issued a signed Commercial Invoice to Plaintiff RS Medical Supply, LLC (hereinafter "RS Medical") for the sale of Five Million (5,000,000) boxes of Cranberry Evolve Nitrile Powder-free Examination Gloves at the purchase price of Twenty-Four Dollars and Fifty Cents ($24.50) per box.

3.      After the Managing Member of RS Medical executed the Commercial Invoice, as a requirement for completing the initiation of the purchase, RS Medical was called upon to provide Defendants GP with a financial deposit of Fifty Thousand Dollars ($50,000.00).  GP noted that this deposit would be "fully refundable if goods are non-conforming."

4.      RS Medical called upon its joint venture partner, Plaintiff ABN Corporation (hereinafter "ABN") to make the financial deposit on its behalf.  Moreover, RS Medical called upon ABN to have one of its customers purchase the personal protective equipment of Cranberry Gloves and pay the required purchase price of One Hundred and Twenty-Two Million Five Hundred Thousand Dollars ($122,500,000.00).

5.      RS Medical and ABN agreed that, in turn for RS Medical locating the supplier of the personal protective equipment of Cranberry Gloves and ABN providing the final buyer of the gloves, that both RS Medical and ABN would jointly split the commissions to be earned from the eventual purchase and sale.  If the purchase and sale had been consummated, the Plaintiffs would have jointly split a commission of Sixteen Million Dollars ($16,000,000.00) sans its costs and fees for orchestrating the sale.

6.      On November 10, 2022, ABN had its attorney, located in Alamo, California, wire the requested Fifty Thousand Dollars through the attorney's IOLTA at JP Morgan Chase National Bank to the financial account of GP at The Bank of Nova Scotia.  Within the Commercial Invoice, GP provided its bank coordinates and noted that Defendant Christian Pellegrini was the account signatory.

7.      On November 12, 2022, GP issued a second Commercial Invoice to ABN for the purchase of One Million and One Hundred Thousand boxes of Cranberry Evolve Nitrile Powder-free Examination Gloves.  GP advised that these Cranberry gloves were located in Miami, Florida and were available to purchase at the costs of Twenty-Eight Dollars and Ten Cents

COMPLAINT FOR DAMAGES                                          Case No.

($28.10) per box.  Thus, the total sale costs of this transaction would be Thirty Million Nine Hundred and Ten Thousand Dollars ($30,910,000.00).  If the purchase and sale had been consummated, for this transaction, the Plaintiffs would have jointly split a commission on or about One Hundred and Sixty-Five Thousand Dollars ($165,000.00) sans its costs and fees for orchestrating the sale.

8.      At the further request of Defendants GP, ABN had its attorney, located in Alamo, California, discuss the proposed transaction with Defendants LAW OFFICE OF VICTORIA E. BRIEANT, P.A. and its principal, Defendant, VICTORIA E. BRIEANT (hereinafter "VB").  On November 15, 2022, VB texted ABN's attorney, noted that she was contacting him at the request of GP and asked if he was available for a call to discuss how RS Medical and ABN were going to purchase the two lots of Cranberry personal protective equipment.

9.      ABN's attorney immediately replied that he was available for the call, but noted that ABN, on behalf of RS Medical had already paid a financial deposit for the purchase of confirming its ability to inspect the lots of Cranberry personal protective equipment.  During this telephone call, VB confirmed her representation of GP and that her client owned the Cranberry personal protective equipment that RS Medical Supply and ABN desired to purchase.   In response to this confirmation, ABN's attorney advised that they had the available funds to purchase the commodities.

10.      Upon the receipt of this information, GP asked RS Medical Supply and ABN to provide the name of their inspector, so that they could coordinate a time for the inspector to inspect the contracted for commodities that was located in Houston, Texas and Miami, Florida. ABN's attorney provided this information and inquired about the inspection time.  VB noted that the inspection would not be today, "but I am working on the schedule for access to the warehouse for inspection tomorrow."

11.      Despite repeated requests, both GP and VB failed to provide any times for RS Medical and ABN's inspectors to visit the warehouses and inspect the commodities.  On November 23, 2022, VB advised that the difficulty in securing a time for the inspectors to verify the commodities was because of GP and VB's difficulty in getting the warehouses to agree to

COMPLAINT FOR DAMAGES                                                    Case No.

allow the inspectors access to same.

12. On December 1, 2022, GP informed ABN that it would provide the actual addresses for the gloves located in Houston, Texas and that they hope to also shortly provide the times for the inspection. Further, GP requested that ABN only provide the addresses to its designated inspectors, but only upon confirmation of the actual inspection time. ABN's attorney next contacted VB to confirm whether the aforesaid information was accurate. VB provided this confirmation and noted the instructions. Later that same date, VB informed ABN's attorney that she had the address for the warehouses but was going to withhold providing the information to said attorney until she had the inspection times.

13. Despite daily requests, neither GP nor VB provided any times for the contracted for inspection nor the warehouse addresses. On December 5, 2022, GP provided the addresses for two (2) purported warehouses to ABN. One address fit the description of a warehouse, while the second was for a U-Haul storage facility. ABN immediately questioned the accuracy of the second address, and GP advised that another facility was present behind the U-Haul storage facility, but that they both had the same address.

14. On December 8, 2022, GP advised ABN that they had secured an anticipated inspection time from the warehouse, and that defendant Christian Pellegrini would call the inspector when he had final confirmation. GP failed to contact the inspector and failed to provide any inspection time.

15. On or about December 9, 2022, ABN began getting contacted by third parties who advised that they were the parties who had the authority to sell the Cranberry gloves located in both Texas and Florida. On this same date, ABN was informed that GP had directly communicated with one of ABN's customers and are informed and believe, and thereon alleges, that GP offered said customer the option to purchase the Cranberry gloves located in Texas. ABN had previously entered into a contract with this customer for the re-sale of GP's Texas lot.

16. After being apprised of GP's actions with one of ABN's customers, ABN immediately sent a Cease-and-Desist letter to that customer, given its violation of the agreement that ABN maintained with the customer. A copy of the Cease-and-Desist letter was also given

COMPLAINT FOR DAMAGES                                    Case No.

to VB. Despite its receipt of a copy of the Cease-and-Desist letter, GP continued to contact ABN's customer and inquire about its desire to purchase the Cranberry lot.

17.   On or about December 10, 2022, GP informed ABN that it had confirmed the inspection for December 12, 2022, and asked ABN to have its inspector ready for the inspection. ABN informed GP that it would have to have its inspector travel from Florida to Texas and wanted to be sure the inspection was going to take place, if it was going to incur the travel and accommodation costs. GP assured ABN that the inspection would proceed, as planned.

18.   On December 12, 2022, the inspector waited outside the designated location. On the morning of December 12, VB confirmed that the inspector was at the right location and was about to "begin the inspection of the 5M boxes of Cranberry product." However, after waiting three days, the inspector never received any confirmation that he was allowed into any warehouse facility and did not inspect any product.

19.   On December 14, 2022, given the inspectors inability to inspect the Cranberry product, GP agreed to return the Fifty Thousand Dollars deposit. Additionally, GP agreed to reimburse ABN for the costs that it incurred to have the inspector travel to Texas for the failed inspections. ABN provided its California attorney's banking coordinates to GP for this transfer. Within a letter to GP, which was carbon copied to VB, that confirmed the above, ABN's attorney offered to resend the account information for the transfer, if necessary.

20.   Finally, GP re-confirmed that the inspection would be rescheduled, and that this should take place on or about December 19th. Nevertheless, GP agreed to waive the requirement for ABN to return the deposit to secure the inspection but would still grant ABN the exclusive rights to purchase the Texas and Florida Cranberry glove lots and that ABN's inspector would be the only inspector authorized for the inspection. Finally, GP offered to provide ABN with a Commercial Invoice for the purchase of a One Hundred Million (100,000,000) lot of Cranberry Evolve Nitrile Gloves that GP owned, which was located in the Los Angeles County area. That GP would provide the Commercial Invoice on December 14th, and that the lot would be available to inspect within the next day or so.

21.   GP also agreed to provide ABN with a videotape of the Texas lot to demonstrate

COMPLAINT FOR DAMAGES                                          Case No.

the product's existence and to provide this videotape to ABN's attorney.

22.     On December 23, 2022, ABN issued its final demand for the return of its deposit. GP failed to provide any definitive inspection time, failed to provide ABN with any videotape that definitely demonstrated the existence of the Cranberry Gloves product and failed to return the financial deposit.

## II.     PARTIES

23.     At all times herein mentioned, Plaintiff, ABN CORPORATION, was, and is, a Wyoming corporation that has its principal place of business in Sheridan, Wyoming.

24.     At all times herein mentioned, Plaintiff, RS MEDICAL SUPPLY, LLC, was, and is, a Nevada corporation that has its principal place of business in East Rancho Dominguez, California.

25.     The Plaintiffs are informed and believe, and on that basis alleges, that at all times mentioned herein defendant GROUPE PELM INTERNATIONAL CORPORATION, was, and now is, a foreign corporation operating in Montréal, Quebec, Canada.

26.     The Plaintiffs are informed and believe, and on that basis alleges, that at all times mentioned herein defendant CHRISTIAN PELLEGRINI was, and now is, an individual residing in Canada, and is the Chief Executive Officer and President of Groupe Pelm International Corporation.

27.     The Plaintiffs are informed and believe, and on that basis alleges, that at all times mentioned herein defendant the LAW OFFICE OF VICTORIA E. BRIEANT, P.A., was, and now is, a Florida corporation that has its principal place of business in Coral Gables, Florida.

28.     The Plaintiffs are informed and believe, and on that basis alleges, that at all times mentioned herein defendant VICTORIA E. BRIEANT was, and now is, an individual residing in Florida and is the sole owner and shareholder of the Law Office of Victoria E. Brieant.  The Plaintiffs are further informed and believe, and on that basis alleges, that at all times mentioned herein, defendant VICTORIA E. BRIEANT was, and is, a licensed attorney practicing law in the State of Florida and served as the professional representative of

COMPLAINT FOR DAMAGES                                              Case No.

defendants Groupe Pelm International Corporation and Christian Pellegrini.

29.     The Plaintiffs are informed and believe and thereon alleges that, at all times herein mentioned, each of the defendants named in the caption of this complaint, which is incorporated herein by this reference, was, and now is, the agent, servant, and employee of each of the other defendants, and all of the things alleged to have been done by said defendants were done in the capacity of, and as agents of, the other defendants.

### III.     JURISDICTION AND VENUE

30.     The matter in controversy exceeds, exclusive of interests and costs, the sum specified by *28 U.S.C. § 1332.*

31.     The within action is not subject to the provisions of sections 2981, *et seq.,* of the Civil Code of the State of California.  The within action is not subject to the provisions of section 1801, *et seq.,* of the Civil Code of the State of California.

32.     Venue is proper in this district in that the Defendants are subject to personal jurisdiction in this district at the time the action is commenced, and there is no district in which the action may otherwise be brought.

### FIRST CAUSE OF ACTION
**(Fraud/Intentional Misrepresentation)**
**(Against all Defendants)**

33.     The Plaintiffs repeat and realleges the allegations contained in paragraphs 1 through 29, inclusive, and incorporated by reference the allegations as though set forth in full herein.

34.     The Plaintiffs believe that the defendants have knowingly provided false statements to the Plaintiffs.  The Defendants knowingly provided the false statement that they owned Cranberry gloves.  The Defendants further knowingly provided a Commercial invoice for the sale of the Cranberry gloves, when they had no gloves to sell to the Plaintiffs.  The Defendants further knowingly informed the Plaintiffs that they had contracted with commercial warehouses for the storage of the Cranberry gloves, and that they were contacting the warehouses to allow the Plaintiffs to inspect their Cranberry gloves, when, in fact, they had not

COMPLAINT FOR DAMAGES                                        Case No.

contracted with any warehouse that was storing any Cranberry gloves on their behalf.  The Defendants knowingly informed the Plaintiffs that they paid additional money to the warehouse in order to ensure that the Plaintiffs obtain access to same to inspect the Cranberry gloves, when they knew that no such funds had been paid.

35.     The Defendants further knowingly informed the Plaintiffs that the deposit would be returned, when the Defendants had no intention to return the deposit. At the initiation of the transaction, The Defendants knowingly informed the Plaintiffs that the failure to complete the transaction would amount to wire fraud, when the Defendants knew that they did not have the capability to complete the transaction.

36.     The Plaintiffs are informed and believe that the Defendants continuously stated that they purchase "distressed lots" directly from the manufacturer, in order to conceal the fact that no such lots existed and to continue with the false narrative that they were having difficulty getting access to the warehouses.  Further, the Plaintiffs are informed and believe that the Defendants knew that the statements about purchasing distressed lots, about the fact that the lots were purchased by Defendant Christian Pellegrini's family, about having to pay additional money in order to gain access to the warehouse, about sending the money to access the warehouse via wire to ensure the access, about contacting the warehouse to schedule the times for the Plaintiffs to access the warehouse, about the funds provided as a deposit would be refunded, if the Defendants failed to perform, about the sale of additional lots to the Plaintiffs, about the providing of exclusivity to the Plaintiffs for the purchase of additional lots, were false.

37.     The Plaintiffs are informed and believe that the defendants, and each of them, knowingly made the false statements owning Cranberry gloves, paying for warehouse fees and scheduling times for Plaintiffs to access the warehouses with the intent to defraud the Plaintiffs out of the financial deposit that the Plaintiffs paid.  The Defendants knowingly issued the Commercial Invoice for the sale of the goods and knowingly threatened the Plaintiffs with the commission of a crime if they did not complete the transaction, with the knowledge that they never owned any goods to sale and the Plaintiffs would never be able to commit any financial

crime, since the Plaintiffs would never be in a position to purchase the non-existent product.

38.     The defendants also knowingly made the false statements of providing goods to sell, even though they provided they had no goods to sell to the Plaintiffs and had no reason to accept any monies from the Plaintiffs, with the intent to defraud the Plaintiffs out of money for the Defendants own personal purposes.

39.     The Plaintiffs are informed and believe that the defendants knowingly made the false statements with the intent to induce the Plaintiffs to rely upon them.

40.     The Plaintiffs were unaware of the falsity of the statements and representations made by the defendants, and each of them, and acted in reliance upon the truth of the representations that the defendants would properly allow for the inspection of the goods and sell the goods to the Plaintiffs.  The Plaintiffs were justified in relying upon the defendants' statements and representations, as they accepted and signed the Commercial Invoice and accepted the receipt of the financial deposit.  As a result of the reliance upon the truth of the statements and representations, the Plaintiffs have sustained damages.

41.     As a further proximate result of the fraud and deceit and other wrongful conduct of the defendants, and each of them, the Plaintiffs were caused to incur additional and unnecessary business expenses, failed to receive the contracted for goods and have the opportunity to resell them to third parties.

42.     The conduct of the cross-defendants was fraudulent, malicious, wanton and oppressive, and justifies an award of punitive damages.

### SECOND CAUSE OF ACTION
### CONVERSION
**(Against all defendants)**

43.     The Plaintiffs repeat and realleges the allegations contained in paragraphs 1 through 29 and paragraphs 34 through 42, inclusive, and by reference thereto incorporates the same as though set forth in full herein.

44.     The Plaintiffs are informed and believe and, on that basis, alleges that the

COMPLAINT FOR DAMAGES                                      Case No.

defendants, and each of them, wrongfully converted the funds received from the Plaintiffs for their own use.

45.     By reason of the wrongful conversion by the defendants, and each of them, the Plaintiffs are entitled to damages including the value of the monies improperly received by the defendants, and each of them, from the date of conversion, until paid in full or date of entry of judgment, plus all forms of damages, by whatever name that the Plaintiffs may be entitled to recover for the conversion.

**THIRD CAUSE OF ACTION**
**CONSPIRACY TO COMMIT FRAUD**
**(Against all defendants)**

46.     The Plaintiffs repeat and realleges the allegations contained in paragraphs 1 through 29 and paragraphs 34 through 45, inclusive, and by reference thereto incorporates the same as though set forth in full herein.

47.     The Plaintiffs are informed and believe that the defendants knowingly conspired to commit fraud against the Plaintiffs.  Further, that all of the defendants' actions were done to induce the Plaintiffs to not question or inquire about the making and security of the financial deposit.  The Plaintiffs are also informed and believe that the defendants knowingly conspired to accept monies from the Plaintiffs, so that they could utilize the funds for themselves for their own purposes.

48.     The Plaintiffs are further informed and believes that the defendants knowingly conspired to conceal the fraud committed against the Plaintiffs asserting that the warehouse was holding up the ability of the Plaintiffs to access same and inspect the goods.

49.     The Plaintiffs were unaware of the conspiracy to defraud them by the defendants and acted in reliance upon the truth of the representations that the defendants owned and would sell the contracted for Cranberry gloves to the Plaintiffs.  The Plaintiffs further acted in reliance upon the truth of the representation of the defendants, as they accepted and signed the Commercial Invoice given to them by the defendants, paid the requested financial deposit, and arranged for the reselling of the goods to a third party.  The Plaintiffs had no reason to

COMPLAINT FOR DAMAGES                                              Case No.

question the defendants' actions, as GP was represented by a licensed attorney and readily accepted the financial deposit.  As a result of the reliance upon the truth of the statements and representations, the Plaintiffs have sustained damages.

50.     As a further proximate result of the conspiracy to commit fraud and deceit and other wrongful conduct of the defendants, the Plaintiffs were caused to incur additional and unnecessary business expenses, failed to receive the contracted for goods and have the opportunity to resell them to third parties.

51.     The conduct of the cross-defendants was fraudulent, malicious, wanton and oppressive, and justifies an award of punitive damages.

**FOURTH CAUSE OF ACTION**
**NEGLIGENT MISREPRESENTATION**
**(Against all defendants)**

52.     The Plaintiffs repeat and realleges the allegations contained in paragraphs 1 through 29 and paragraphs 34 through 51, inclusive, and by reference thereto incorporates the same as though set forth in full herein.

53.     The Plaintiffs are informed and believe that the defendants have knowingly provided false statements to the Plaintiffs.  Further, that all of the above statements made by the defendants that they owned and would sell the contracted for goods, that the Plaintiffs would be allowed to inspect the warehouses where the goods were stored, and that the Plaintiffs financial deposit would be returned, if the defendants failed to perform were knowingly false.

54.     The Plaintiffs are informed and believe that the defendants negligently made the statements and representations, for the purpose of inducing the Plaintiffs to rely upon them. The Plaintiffs are also informed and believe that the defendants negligently made the statements and representations.

55.     The Plaintiffs were unaware of the falsity of the representations and statements and acted in reliance upon the truth of the representations.  As a result of the reliance upon the truth of the statements and representations, the Plaintiffs sustained damages.

56.     As a further proximate result of the fraud and deceit and other wrongful conduct

COMPLAINT FOR DAMAGES                                    Case No.

of the cross-defendants, the Plaintiffs were caused to incur additional and unnecessary business expenses, failed to receive the contracted for goods and have the opportunity to resell them to third parties.

## FIFTH CAUSE OF ACTION
### TORTIOUS INTERFERENCE WITH CONTRACT
### (Against all defendants)

57.     The Plaintiffs repeat and realleges the allegations contained in paragraphs 1 through 29 and paragraphs 34 through 56, inclusive, and by reference thereto incorporates the same as though set forth in full herein.

58.     The Plaintiffs allege on information and belief that at all relevant times, the Defendants were aware of the Plaintiffs contract to resell the contracted for Cranberry gloves to a third party.

59.     The Defendants engaged in a scheme to interfere with the Plaintiffs contract to resell the contracted for Cranberry gloves to a third party by directly contacting the third party and offering to sell the gloves directly to the third party.  The Defendants illicit contacts and agreements to sell the gloves directly to the third party constitute wrongful, intentional interference with the Plaintiffs contractual relationship with the third party.

60.     Despite written warnings by the Plaintiffs, the Defendants continued to negotiate with third parties for the sale of the Cranberry gloves that were supposed to be exclusively reserved for the Plaintiffs.

61.     As alleged herein, the Defendants' actions and participation in a scheme to interfere with the Plaintiffs contract to sell the Cranberry gloves to a third party was a substantial factor that prevented full performance of the contract.

62.     As a proximate result of Defendants intentional interference with the Plaintiffs contract, the Plaintiffs have been damages in an amount to be proven at trial.

63.     The Plaintiffs allege on information and belief that the actions of the Defendants in interfering with the Plaintiffs contract to sell the goods to a third party, and which caused the Plaintiffs to cease doing business with that third party, were fraudulent, malicious and

oppressive and constituted despicable conduct in conscious disregard of the Plaintiffs rights and were intended to cause the Plaintiffs harm.  The Plaintiffs are therefore entitled to an award of punitive damages.

## SIXTH CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE
### (Against all defendants)

64.    The Plaintiffs repeat and realleges the allegations contained in paragraphs 1 through 29 and paragraphs 34 through 63, inclusive, and by reference thereto incorporates the same as though set forth in full herein.

65.    The Plaintiffs allege on information and belief that at all relevant times, the Defendants were aware of the economically advantageous relationship that the Plaintiffs had with the third party that it contracted for to resell the Cranberry gloves.

66.    As alleged herein, the Defendants engaged and continued to engage in a scheme to interfere with the Plaintiffs opportunity to sell the gloves to the third party.  But for the wrongful and intentional interference with the Plaintiffs prospective economically advantageous relationship with the third party, the Plaintiffs and the third party would have completed the resell of the Defendants Cranberry gloves and the resell of Cranberry gloves available to be sold by other business entities.  The Defendants fraudulent agreement to sell the Cranberry gloves to the third party, even though the Defendants stated that they would exclusively sell them to the Plaintiffs, interfered with the prospective contract rights the Plaintiffs could, and eventually did maintain.

67.    As a proximate result of Defendants' intentional interference with the Plaintiffs prospective economic advantage, the Plaintiffs have been damaged in an amount to be proven at trial.

68.    The Plaintiffs allege on information and belief that the actions of the Defendants in interfering with the Plaintiffs prospective economic advantage were fraudulent, malicious and oppressive and constituted despicable conduct in conscious disregard of the Plaintiffs' rights and were intended to cause the Plaintiffs harm.  The Plaintiffs are therefore entitled to an

1  award of punitive damages.

2  ## DEMAND FOR JURY TRIAL

3      69.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiffs

4  hereby demand trial by jury on all issues in this Action.

5  ## PRAYER FOR RELIEF

6      WHEREFORE, Plaintiffs pray for judgment against the defendants, and each of them,

7  as follows:

8      1.    On the First Cause of Action, against all Defendants, compensatory damages in

9  an amount to be proven at trial, but currently believed to exceed $16 Million Dollars, plus

10  interest as allowed by law, punitive damages and costs of suit.

11      2.    On the Second Cause of Action, against all Defendants, compensatory damages

12  in an amount to be proven at trial, but currently believed to exceed $50,000.00 Dollars, plus

13  interest as allowed by law, punitive damages and costs of suit.

14      3.    On the Third Cause of Action, against all Defendants, compensatory damages in

15  an amount to be proven at trial, but currently believed to exceed $16 Million Dollars, plus

16  interest as allowed by law, punitive damages and costs of suit.

17      4.    On the Fourth Cause of Action, against all Defendants, compensatory damages

18  in an amount to be proven at trial, but currently believed to exceed $16 Million Dollars, plus

19  interest as allowed by law and costs of suit.

20      5.    On the Fifth Cause of Action, against all Defendants, compensatory damages in

21  an amount to be proven at trial, but currently believed to exceed $16 Million Dollars, plus

22  interest as allowed by law, punitive damages and costs of suit.

23      6.    On the Sixth Cause of Action, against all Defendants, compensatory damages in

24  an amount to be proven at trial, but currently believed to exceed $16 Million Dollars, plus

25  interest as allowed by law, punitive damages and costs of suit.

26      7.    That the Court grant such other and further relief as this Court deems just and

27  reasonable.

28

COMPLAINT FOR DAMAGES                    Case No.

Date:  January 2, 2023                    LAW OFFICES OF JIMMIE L. WILLIAMS

By_____

Jimmie L. Williams
Attorneys for Plaintiffs,
ABN CORPORATION and RS MEDICAL
SUPPLY, LLC

COMPLAINT FOR DAMAGES                                    Case No.