UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABN CORPORATION, et al., | Case No.  23-cv-00004-RFL   (LJC) |
| Plaintiffs, | |
| v. | **ORDER REGARDING DISQUALIFICATION OF COUNSEL** |
| GROUPE PELM INTERNATIONAL CORPORATION, et al., | |
| Defendants. | |

## I.      INTRODUCTION

        This case involves claims of fraud pertaining to an intended transaction for the purchase of a large quantity of medical examination gloves by Plaintiffs ABN Corporation and RS Medical Supply, LLC.  Plaintiffs have sued not only the intended sellers (Groupe PELM International Corporation and Christian Pellegrini,[1] collectively, the "GP Defendants"), but also the GP Defendants' attorney Victoria Brieant and her law office (collectively, "Brieant"), who represented the GP Defendants in the transaction at issue.  Brieant continues to represent the GP Defendants in this litigation, although she has retained separate counsel to represent herself.  The Honorable Rita Lin has referred discovery matters to the undersigned magistrate judge, and the undersigned therefore proceeds under 28 U.S.C. § 636(b)(1)(A) to address Brieant's apparent conflict of interest, which arises in significant part from discovery.  For the reasons discussed below, Brieant is hereby DISQUALIFIED from representing the GP Defendants in this litigation,

---

[1] Pellegrini's name has also sometimes been spelled "Pelligrini" in this litigation, including in some filings by the GP Defendants.  This Order follows the spelling that is used more consistently—although not exclusively—in Pellegrini's own declaration in support of a previous Motion to Dismiss.  *See generally* ECF No. 44-1; *but see id.* ¶ 3 ("The extended Pelligrini family-owned businesses . . . .").

1    and discovery is STAYED to allow time for the GP Defendants to retain new counsel.

2        Groupe PELM has also asserted third party claims against Plaintiffs' attorneys (in this

3    litigation) Jimmie Williams, Aaron McKown, and McKown's law firm.  The parties agree that

4    Williams was involved in the underlying transaction, but McKown and his firm dispute any

5    involvement besides McKown (who, in their telling, was then employed by a different firm)

6    providing advice regarding risk of litigation.  *See* ECF No. 105 (Mot. to Strike).  Plaintiffs and

7    Williams are ORDERED TO SHOW CAUSE why Williams should not be disqualified for the

8    same reasons as Brieant.  The Court defers any question of whether McKown and his firm should

9    be disqualified until after Judge Lin resolves their Motion to Strike, which might (or might not)

10   result in them no longer being parties to the case.

## II.    BACKGROUND

12       The underlying transaction in this case involved a large quantity of medical gloves, at a

13   time early in the COVID-19 pandemic when personal protective equipment was hard to come by.

14   Plaintiffs allege that they sought to purchase the gloves and paid the GP Defendants a deposit to

15   allow Plaintiffs' inspector to confirm that the gloves existed, but Defendants wrongfully denied

16   Plaintiffs' inspector access to the warehouse, and the GP Defendants never actually had the

17   gloves.  Defendants contend that Plaintiffs lacked the funds to complete the transaction and

18   wrongfully concealed the true intended buyer, and that their inspector was not qualified to enter

19   the warehouse.  During the putative transaction, attorneys Brieant and Williams communicated on

20   behalf of their clients about Plaintiffs' funds and the inspector's access to the warehouse.

21       Defendants moved to dismiss the claims against them for a number of reasons.  Most

22   relevant to the present Order, Brieant asserted that public policy required dismissal of the claims

23   against her because the GP Defendants' attorney-client privilege governing communications

24   related to the transaction at issue "prevents [her] from mounting a defense."  ECF No. 48 at 14.

25   Citing *Solin v. O'Melveny & Myers*, 89 Cal. App. 4th 451 (2001), Brieant argued:

26           [T]he GP Defendants' attorney-client privilege constrains Attorney
            Brieant's ability to defend herself. Plaintiffs' claims cut to the heart
27          of what Attorney Brieant "knew," which in turn requires an
            examination of the communications between Attorney Brieant and
28          the GP Defendants.

United States District Court
Northern District of California

*Id.* at 15; *see also* ECF No. 51 at 8–10 (similar arguments in Brieant's reply brief).

Before the February 20, 2024 hearing on Defendants' Motions to Dismiss, Judge Lin asked the parties to be prepared to address whether the GP Defendants had waived Brieant's apparent conflict of interest and received independent advice on that issue, and whether Plaintiffs' Complaint plausibly "plausibly allege facts that would support application of the crime-fraud exception to attorney-client privilege." ECF No. 64.

After the hearing, but before ruling on Defendants' motions, Judge Lin ordered Brieant to show cause why she should not be disqualified from representing the GP Defendants, noting that "Brieant is in a situation in which there is a significant risk that her representation of her co-defendants will be materially limited by her own interests." ECF No. 66 at 3.[2] Judge Lin explained the apparent grounds for disqualification as follows:

> [Brieant's] motion to dismiss admits that her defense would be based on attorney-client privileged communications — i.e., that she made the representations at issue because of what her client told her. *See* Dkt. No. 48 at p. 15 ("[T]he GP Defendants' attorney-client privilege constrains Attorney Brieant's ability to defend herself. Plaintiffs' claims cut to the heart of what Attorney Brieant 'knew,' which in turn requires an examination of the communications between Attorney Brieant and the GP Defendants."). In other words, she will need to reveal inculpatory statements made by her clients in order to mount her own defense.
>
> At this stage, it is a potential conflict, not an actual conflict. The Court has not yet ruled upon Brieant's motion to dismiss, which does not assert theories incompatible with the GP defendants' defense. However, there is significant risk that a direct, actual conflict will soon develop between Brieant and her co-defendants. For example, the parties will almost certainly be litigating the discoverability of attorney-client privileged communications between Brieant and the GP defendants. In that dispute, if Brieant is accurately representing that the communications will be exculpatory for her, it would be in Brieant's interest for the Court to find those communications non-privileged (for example, because they were not made for the purpose of seeking legal advice), while such a result would be against the GP defendants' interests. On the other hand, if the GP defendants believe that Brieant inaccurately represented the situation to the plaintiffs, the GP defendants may have their own claim against Brieant that must be asserted in this lawsuit.

---

[2] *ABN Corp. v. Groupe PELM Int'l Corp.*, No. 23-cv-00004-RFL, 2024 WL 818343 (N.D. Cal. Feb. 27, 2024). All citations herein to previous Orders and other filings in the docket refer to page numbers as assigned by the Court's ECF filing system, unless otherwise noted.

United States District Court
Northern District of California

In addition, Brieant's ongoing representation of her co-defendants poses another problem under California Rule of Professional Responsibility 3.7, which provides:

> (a) A lawyer shall not act as an advocate in a trial in which the lawyer is likely to be a witness unless:
>
> > (1) the lawyer's testimony relates to an uncontested issue or matter;
> >
> > (2) the lawyer's testimony relates to the nature and value of legal services rendered in the case; or
> >
> > (3) the lawyer has obtained informed written consent from the client.

Brieant is plainly a material witness to the allegations in the Complaint. *See Yagman v. Galipo*, No. CV 12-7908-GW SHX, 2014 WL 2566129, at *3 (C.D. Cal. June 3, 2014) (applying this rule in a civil context, and citing another case where "disqualification of plaintiff's counsel was warranted to exclude a party's attorney from representing him at trial for patent infringement where the attorney had also performed the patent prosecution for plaintiff and would need to testify as to what happened in the course of the prosecution, even where the client gave informed consent").

The Court has an obligation to disqualify Brieant unless she can present evidence that the GP defendants have given informed written consent regarding her representation of them. At the hearing on February 20, 2024, Brieant expressed concern that disclosing this evidence would violate attorney-client privilege. However, a conflict waiver is an agreement pertaining to the conditions of an attorney's employment, which is not privileged. *In re Michaelson*, 511 F.2d 882, 888 (9th Cir. 1975) ("[I]n the absence of unusual circumstances, the fact of a retainer, the identity of the client, the conditions of employment and the amount of the fee and who paid it do not come within the privilege of attorney-client relationship."). And, in any event, "in camera review does not destroy the privileged nature of the contested communications." *United States v. Zolin*, 491 U.S. 554, 569, 109 S. Ct. 2619, 2629, 105 L. Ed. 2d 469 (1989); see also *Ballew v. City of Pasadena*, No. CV 18-0712 FMO (ASX), 2020 WL 13584506, at *2 (C.D. Cal. May 18, 2020) (reviewing conflict of interest waiver in camera in assessing disqualification motion).

ECF No. 66 at 3–5.

Brieant (in her capacity as counsel for the GP Defendants) responded that disqualification was not appropriate for a merely potential conflict of interest, rather than an actual conflict, because she had not taken a position adverse to the GP Defendants. ECF No. 67 at 6–8. She contended that the same potential conflicts would also apply to Plaintiffs' attorneys, whom Defendants intend to call as witnesses, and suggested in a footnote that "the Court has chosen the

Plaintiffs' side of the case, without having heard Defendants' case." *Id.* at 8–9 & n.5.  She also argued that disqualification would unduly prejudice the GP Defendants by depriving them of their chosen counsel, *id.* at 9–10, and that public policy favored dismissing the claims against her, not disqualifying her, *id.* at 10–11.  Brieant argued that "[n]o court has held a conflict waiver fits squarely within the category of 'an agreement pertaining to the conditions of an attorney's employment'" as addressed by the Ninth Circuit in *Michaelson*, and that the Central District's decision in *Ballew* was distinguishable because a plaintiff had filed a motion to disqualify defense counsel and there was a clearer conflict with counsel representing "clients whose interests could be impacted 'at the expense of another.'" *Id.* at 12–14.  In a conclusion section, Brieant asserted that the GP Defendants would seek a writ of mandamus if the Court disqualified her or ordered the GP Defendants to submit conflict waivers for in camera review.  *Id.* at 14.

Judge Lin denied the GP Defendants' and Brieant's Motions to Dismiss, and discharged the Order to Show Cause "in view of Brieant's representation that no actual conflict or sufficiently ripe potential conflict has yet arisen."  ECF No. 68 at 1.  Judge Lin nevertheless expressed "concern[] that this may soon ripen into an actual conflict, or a potential conflict triggering disclosure obligations to Brieant's clients, upon the opening of discovery," based on Brieant's likely status as a material witness and her previous "represent[ation] that 'the GP Defendants' attorney-client privilege constrains Attorney Brieant's ability to defend herself.'" *Id.* at 8 (quoting ECF No. 48 at 15).  Judge Lin therefore required the parties to file a joint letter notifying the Court "[w]ithin seven days of either (a) Brieant's deposition being noticed, or (b) discovery requests seeking attorney-client communications that would normally be privileged absent the applicability of the crime-fraud or other exception," and indicated that the Court would then set a briefing schedule to consider whether a conflict had arisen and discovery should be stayed.  *Id.* at 9.

The parties later filed two joint discovery letters pertaining to Plaintiffs' discovery requests to the GP Defendants and to Brieant, both of whom withheld documents based on assertions of attorney-client privilege.  ECF No. 93 at 3 (Plaintiffs' noting the GP Defendants' objections based on privilege and that Plaintiffs asked the GP Defendants to prepare a joint letter in accordance with Judge Lin's previous Order); ECF No. 95 at 2, 4 (Plaintiffs' raising a dispute regarding the

1    adequacy of a privilege log, and Brieant's asserting that her privilege log was adequate). Despite

2    Plaintiffs' request that the GP Defendants prepare a joint letter as required by Judge Lin's Order,

3    no such letter was filed.

4        Judge Lin referred all discovery matters to the undersigned magistrate judge, and this

5    Court ordered the parties to file simultaneous briefs addressing both prongs of Judge Lin's Order:

6    (1) "how the information sought is potentially privileged and whether any waiver of the privilege

7    or other exception might apply to render the discovery sought nonconfidential," along with "the

8    date of the scheduled deposition or a copy of the discovery request at issue"; and (2) "their view as

9    to whether a conflict of interest has arisen and whether the discovery at issue should be stayed."

10   ECF No. 99 at 2–3; *see* ECF No. 68 at 9. This Court also required the parties' briefs to "state their

11   position as to what further action would be appropriate if the Court determines that an actual

12   conflict has arisen." ECF No. 99 at 3. The Court held the parties' discovery disputes in abeyance

13   pending resolution of the apparent conflict of interest, without prejudice to any party filing an

14   administrative motion requesting expedited review if they believed the Court should resolve a

15   discovery dispute before the conflict of interest, which no party has done. *See id.*

16       Brieant and Plaintiffs each filed a responsive brief. ECF Nos. 100, 101. The GP

17   Defendants—the owners of the disputed privilege at issue, and the parties who risk losing their

18   attorney if the Court disqualifies Brieant—did not file a response. Put differently, Brieant (in her

19   capacity as an attorney, rather than as a party) did not file a response on the GP Defendants'

20   behalf.

21       Much of both Brieant's and Plaintiffs' responsive briefs addresses whether the crime-fraud

22   exception applies to Brieant's communications with the GP Defendants, and whether in-camera

23   review is appropriate to evaluate that question.[3] The Court does not reach those issues here.

24       With respect to the conflict-of-interest issues addressed by this Order, Brieant argues that

25

26   _____

27   [3] Plaintiffs seek in camera review, and although Brieant contends Plaintiffs have not made a prima
     facie showing of the crime-fraud exception, she "is willing to request Mr. Pellegrini seek
     independent counsel to advise him on a limited waiver of the privilege to allow for an in-camera

28   review of the communications," "[i]n the spirit of cooperation and compromise." *See* ECF No.
     100 at 10.

1    no conflict has arisen because she and the GP Defendants "remain aligned that no waiver of the

2    privilege has occurred and thus the subject communications should remain protected by the

3    attorney-client privilege."  ECF No. 100 at 6.  Other than that single sentence, she does not

4    otherwise discuss that issue, despite the Court's instruction to brief it, nor did she comply with the

5    instruction to address "what further action would be appropriate if the Court determines that an

6    actual conflict has arisen."  *See* ECF No. 99 at 3.

7          Plaintiffs' brief, in addition to addressing the crime-fraud exception, also argues briefly

8    that Brieant should be disqualified.  ECF No. 101 at 8–9.  Aside from general legal principles

9    regarding disqualification, the entirety of Plaintiffs' argument on this issue is as follows:

> In this case, defendant Brieant should not be permitted to represent
> defendants Groupe Pelm and Pellegrini. It is reasonable to presume
> that she was aware of the fraudulent scheme being undertaken by said
> defendants. Accordingly, she should have counseled them about the
> perpetuation of the fraud, in which case, their communications
> discussing the fraud shows that her interests are adverse to her clients.
> The determination of whether her actions were reasonable are thus
> called into question and can affect her ability to properly represent the
> defendants.
>
> And, if the defendants falsely informed her about the existence of the
> product and of their efforts to access the product, her documents and
> anticipated testimony will be directly adverse to the defendants.

*Id.* at 9.  Plaintiffs also requested a stay of discovery.  *Id.* at 2–3, 9–10.

After submission of those briefs, the parties filed two additional discovery disputes, ECF

Nos. 102, 115, and the Court stayed discovery pending resolution of Brieant's apparent conflict of

interest, ECF No. 116.

## III.    LEGAL STANDARD

As set forth in Judge Lin's Order to Show Cause, district courts have an obligation to

examine potential conflicts of interest by attorneys, and "may disqualify an attorney for not only

acting improperly but also for failing to avoid the appearance of impropriety."  ECF No. 66 at 1–2

(quoting *Gas-A-Tron of Ariz. v. Union Oil Co. of Cal.*, 534 F.2d 1322, 1324–25 (9th Cir. 1976)

(per curiam)).  Federal courts "apply state law in determining matters of disqualification," *In re

County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000), and this Court's local rules require

attorneys to comply with the California Rules of Professional Conduct, Civ. L.R. 11-4(a)(1).

7

Under California law, disqualification is disfavored and should be employed only when necessary, but "[t]he important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process."  ECF No. 66 at 2 (quoting *People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1145 (1999)).  Although grounds for disqualification may be rooted in state law, the authority to impose a sanction of disqualification arises from the federal courts' "inherent powers to manage their own proceedings and to control the conduct of those who appear before them," and the Ninth Circuit has reversed a judgment entered after trial when a "district court abdicated its duty" to address potential issues of unethical representation.  *Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996).

Disqualification can be appropriate even absent a showing of directly conflicting interests.  For example, "[i]t has long been recognized that where ethical considerations are concerned, disqualification should be ordered not only where it is *clear* that the attorney *will* be adverse to his former client but also where it *appears* that he *might*."  *Woods v. Superior Ct.*, 149 Cal. App. 3d 931, 936 (1983); *see also Friedberg v. Friedberg*, No. B313432, 2022 WL 4653626, at *9 (Cal. Ct. App. Sept. 30, 2022) (quoting *Woods*).  "[T]he purpose of the rules against representing conflicting interests is not only to prevent dishonest conduct, but also to avoid placing the honest practitioner in a position where he may be required to choose between conflicting duties or attempt to reconcile conflicting interests."  *Woods*, 149 Cal. App. 3d at 936; *see also Anderson v. Eaton*, 211 Cal. 113, 116 (1930).  Defendants previously asserted that "disqualification based on a *potential* conflict is simply not a proper inquiry," ECF No. 67 at 6 (heading capitalization altered), but they cited no authority for such a rule, which is inconsistent with California law as stated in *Woods*.[4]

---

[4] California appellate courts have not been entirely consistent as to whether "[d]isqualification [can be] proper . . . to avoid any appearance of impropriety," *Woods*, 149 Cal. App. 3d at 936, or if an attorney cannot be "disqualified *solely* on this basis," *Gregori v. Bank of Am.*, 207 Cal. App. 3d 291, 306 (1989).  The Ninth Circuit, however, has stated "that a court may disqualify an attorney for not only acting improperly but also for failing to avoid the appearance of impropriety." *Erickson*, 87 F.3d at 303 (quoting *Gas-A-Tron*, 534 F.2d at 1324–25).  This Court need not delve into the interplay between state and federal precedent, nor predict how the California Supreme Court would resolve that issue.  Brieant's actual and potential conflicts of interest with the GP Defendants, as well as risk of jury confusion from her various roles in the case, rise above a mere appearance of impropriety.

United States District Court
Northern District of California

1    Defendants have also suggested that Judge Lin's sua sponte consideration of potential

2    disqualification was improper.  *See id.*  Plaintiffs have now also argued that Brieant should be

3    disqualified, so the Court's authority to act sua sponte is not as relevant.  *See* ECF No. 101 at 2, 8–

4    9.  But courts have also held that they can—and indeed should—disqualify counsel sua sponte

5    when necessary to protect the integrity of the judicial process.  As the Central District of

6    California has explained, in a case where a party challenged a movant's standing to seek

7    disqualification:

8         And even if [the parties seeking disqualification] somehow didn't
          [have standing to bring that motion], standing still wouldn't have
9         presented an issue here. District courts have an "inherent obligation
          to manage the conduct of attorneys who appear before [them] and to
10        ensure the fair administration of justice." *Colyer* [*v. Smith*, 50 F. Supp.
          2d 966, 72 (C.D. Cal. 1999)] (citing *Chambers v. NASCO, Inc.*, 501
11        U.S. 32, 43–44 (1991)); *see also SpeeDee Oil*, 20 Cal. 4th at 1145
          (discussing a trial court's inherent authority to disqualify an attorney).
12        This obligation overrides any "prudential barrier to litigating the
          rights and claims of third parties," like standing. *Colyer*, 50 F. Supp.
13        2d at 972; *cf. Woods v. Superior Court*, 149 Cal. App. 3d 931, 936
          (1983) (emphases removed) ("[D]isqualification should be ordered
14        not only where it is clear that the attorney will be adverse to his former
          client but also where it appears that he might."). The Court would
15        have honored that obligation by raising the disqualification issue on
          its own when it found out about the conflict, as it inevitably would
16        have. *See, e.g.*, *People v. Peoples*, 51 Cal. App. 4th 1592 (1997)
          (affirming the ability of a trial court to disqualify counsel on the
17        court's motion).

18    *State Comp. Ins. Fund v. Drobot*, 192 F. Supp. 3d 1080, 1090 (C.D. Cal. 2016) (some alterations

19    in original).

20        Because a court can and must consider disqualification sua sponte when an attorney's

21    participation calls into question the fair administration of justice, the Court proceeds to the

22    question of whether Brieant can permissibly represent her codefendants under the circumstances

23    of this case.[5]

24

25    [5] Although Plaintiffs have now requested Brieant's disqualification, their arguments on that point
      are minimal.  *See* ECF No. 101 at 8–9.  The Court has raised most of the specific reasons for
26    disqualification sua sponte, either in Judge Lin's previous Orders or in this Order.  Defendants
      received sufficient notice of the potential for disqualification, and of the potential grounds for
27    disqualification, through Judge Lin's previous Orders on the subject and this Court's previous
      Order directing the parties to address appropriate consequences if the Court finds a conflict of
28    interest, which Defendants failed to do.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    **IV.    ANALYSIS**

2        Brieant's representation of her codefendants raises two broad categories of problems, as

3    discussed in detail below.  The first category consists of actual and potential conflicts of interest

4    between Brieant and the GP Defendants, calling into question her ability to represent their

5    interests adequately in this case.  Such issues implicate Rule 1.7(b) of the California Rules of

6    Professional Conduct and require Brieant's disqualification as counsel for all purposes.

7        The second category relates to potential confusion to the finder of fact, and prejudice to

8    any or all parties, caused by Brieant's simultaneous roles as a party, an attorney, and a material

9    witness.  That issue implicates Rule 3.7 of the California Rules of Professional Conduct and

10   requires Brieant's disqualification as counsel at least for the purposes of depositions, evidentiary

11   hearings, and trial.

12       Although both of those rules allow for waiver by a client, their exceptions for waiver are

13   not absolute and would not be available here.  In any event, the GP Defendants have offered no

14   evidence that they provided informed consent to Brieant's conflicts of interest.

15       Finally, even if the California rules at issue did not require Brieant's disqualification, this

16   Court has inherent authority and responsibility to disqualify counsel when necessary to protect the

17   integrity of the judicial process, and would exercise that authority here.

18       **A.    Conflicts of Interest: California Rule 1.7(b)**

19       Rule 1.7(b) of the California Rules of Professional Conduct provides that a "lawyer shall

20   not, without informed written consent from each affected client and compliance with paragraph

21   (d), represent a client if there is a significant risk the lawyer's representation of the client will be

22   materially limited by . . . the lawyer's own interests."  Cal. R. Prof'l Conduct 1.7(b).  In adopting

23   that rule, the Commission on Professional Conduct explained that it "tracks the ABA Model Rule"

24   and was intended to "increase client protection" as compared to earlier versions of the equivalent

25   California rule.  *See* New Rule of Professional Conduct 1.7, Executive Summary, at p.2, available

26   at https://www.calbar.ca.gov/Portals/0/documents/rules/Rule_1.7-Exec_Summary-Redline.pdf.

27   The Commission also noted that California's version of Rule 1.7 "carr[ied] forward California's

28   more client-protective requirement that a lawyer obtain the client's 'informed written consent,'" a

United States District Court
Northern District of California

1    defined term that requires more stringent and formalized disclosures than might be necessary

2    under the ABA Model Rules' standard of "informed consent, confirmed in writing." *Id.*; *see* Cal.

3    R. Prof'l Conduct 1.0.1(e), (e-1).

4         Former Rule 3-310(C) of the California Rules of Professional Conduct, a predecessor rule

5    to the current Rule 1.7, "generally prohibit[ed] the representation of clients with actual *or potential*

6    conflicts of interest absent an express waiver." *Rodriguez v. Disner*, 688 F.3d 645, 656 (9th Cir.

7    2012) (emphasis added).  Under that earlier rule, a conflict was "actual" when it rendered an

8    attorneys' representation less effective, and "potential" when "a lawyer's representation of one

9    client might, in the future, become less effective by reason of his representation of the other." *Id.*

10   The Court does not understand the current rule, which was intended to strengthen protection of

11   clients, as excusing potential conflicts, *cf.* ECF No. 67 at 6 (asserting that the Court's concerns

12   about potential conflict was "not a proper inquiry"), or as setting a lesser standard for conflicts

13   arising from attorneys' own interests than the those based on the interests of multiple clients.

14        As discussed below, this Court is aware of only one other case from any jurisdiction that

15   has addressed similar circumstances, which considered an attorneys' representation of his

16   codefendant to be a profound conflict of interest.  Many of the same considerations that informed

17   disqualification in that case are also present here.  The circumstances of this case also raise other

18   conflicts of interest, including the issues related to attorney-client privilege that Judge Lin

19   previously identified, as well as possibly diverging interests between Brieant and the GP

20   Defendants with respect to any potential settlement.  Taken together, these conflicts would require

21   Brieant's disqualification even if the GP Defendants had provided informed written consent.  With

22   no indication that such consent has been provided, the need for disqualification is particularly

23   clear.

24            **1.**     **Representation of an Attorney's Codefendant: *Rubin v. Stewart***

25        Few cases appear to have considered whether a lawyer who is a party to a case may

26   represent a co-party.  The parties have not cited any decision addressing such circumstances.  In

27   the only case this Court has found involving an attorney representing a codefendant, from the

28   Pennsylvania state court system, the trial court noted that the reason why rules of professional

conduct do not specifically address lawyers representing their own codefendants is likely that "no one even thought that would be a possibility," and the appellate court affirmed disqualification. *Rubin v. Stewart*, 293 A.3d 617 (Table), 2023 WL 2003961, at *25 (Pa. Super. Ct. 2023) (quoting the trial court). The Central District of California has also disqualified an attorney from representing her co-plaintiff, after the attorney failed to respond to a short order to show cause noting that the representation appeared to raise conflicts of interest, but that decision does not include detailed analysis. *See L. Offs. of Angela Swan v. JP Morgan Chase & Co.*, No. 2:24-CV-01114-JLS-PD, 2024 WL 3529041 (C.D. Cal. July 10, 2024) (Order to Show Cause); *id.* at ECF No. 27 (C.D. Cal. Aug. 28, 2024) (disqualifying counsel after she failed to respond). The Court is not aware of any case where a court has allowed an attorney to represent their own co-party.[6]

In *Rubin*, a Pennsylvania appellate court affirmed the disqualification of an attorney from representing a codefendant, in an unpublished decision. The plaintiff had sued under a state misuse-of-process law, naming as defendants both the lawyer (Stewart) and client (Alejandro) who had previously sued the plaintiff. Stewart intended to represent Alejandro again, and Alejandro asserted in court that she consented to such representation and waived any conflict, but the trial court disqualified Stewart sua sponte on the morning that trial had been set to begin. *Rubin,* 2023 WL 2003961, at *24. The trial court stated that the case presented a "palpable and blatant" conflict of interest—"about as profound a conflict as you can have, co-defendants where one co-defendant is an attorney representing the other co-defendant." *Id.* at *25 (quoting the trial court). The trial court's explanation of its decision to disqualify Stewart included the following passages:

> Each defendant could choose to give evidence against the other in defense of himself or herself. The Court does not believe that Stewart could give detached advice as to what evidence [ ] Alejandro could

---

[6] Brieant has suggested that Judge Lin's sua sponte inquiry into Brieant's ability to represent the GP Defendants evinces bias, potentially requiring Judge Lin's recusal. ECF No. 67 at 11–12 n.9. Given that an attorney's representation of their own codefendants appears to be highly unusual, and was disallowed in the only such case of which this Court is aware, Brieant's assertion of bias is unfounded. And while Brieant has suggested that Judge Lin applied a double standard to her as compared to Plaintiffs' counsel Jimmie Williams, *see id.*, Williams was not a party to the case at the time Judge Lin issued her Order to Show Cause. Now that he is, his continued representation of co-parties also warrants scrutiny, as discussed further below.

United States District Court
Northern District of California

> present in her defense when some of that evidence might be adverse to his own defense. Nor does the Court think he should be put in a situation where he would have to do that in order to competently represent her. The Rules protect clients from incompetent representation, and they protect attorneys from the problematic choice between providing competent representation and protecting their own interests by defending a claim against oneself.

*Id.* at *26 (quoting the trial court; brackets in original).

> Stewart cannot reasonably believe he can competently advise [ ] Alejandro when there is the potential that some of the decisions they would have to make would require a choice between an option that is better for Stewart or one that is worse for him. For example, at the January hearing, Stewart said there might be a conflict if [ ] Alejandro had filed a cross-claim against him, but that she hadn't. . . . . That Stewart has not filed a cross-claim against himself on behalf of [ ] Alejandro comes as no surprise to the Court. Even the potential that [ ] Alejandro might want to file a cross-claim against her attorney creates an actual conflict of interest. An attorney cannot be expected to advise his client about the availability or merits of a cross-claim against himself—this is precisely the kind of decision the Rule against personal interest conflicts protects an attorney from having to contemplate.

*Id.* *27 (quoting the trial court; brackets in original).

The court in *Rubin* relied primarily on Rule 1.7 of the Pennsylvania Rules of Professional Conduct, which provides that a "concurrent conflict of interest exists if . . . there is a significant risk that the representation of one or more clients will be materially limited by . . . the personal interest of the lawyer," Pa.R.P.C. 1.7(a)(2), and the following official comment thereto:

> The lawyer's own interests should not be permitted to have an adverse effect on representation of a client. **For example, if the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice.**

*Rubin*, 2023 WL 2003961, at *26 (quoting Pa.R.P.C. 1.7, Explanatory Comment 10) (emphasis added in *Rubin*). Those Pennsylvania rules and comment are identical to the equivalent rules and comment in the ABA Model Rules, but differ in some respects from the equivalent California rules, as discussed below.

The trial court allowed Alejandro time to find another lawyer, but she ultimately proceeded pro se, and later appealed the order disqualifying Stewart after the plaintiff prevailed at trial against both Alejandro and Stewart. The appellate court affirmed Stewart's disqualification, finding that the trial court's "thorough and well-reasoned basis for its ruling" required no further

elaboration. *Id.* at *27. The appellate court agreed that "Stewart's representation of Alejandro—in a case in which he is her co-defendant and the claims are based upon his representation of her in a prior action—is, as the trial court observed, 'about as profound a conflict as you can have[.]'" *Id.* (quoting the trial court; brackets in original). Although *Rubin* was decided in a different jurisdiction, this Court finds its reasoning persuasive.

### 2.    Comparing this Case with *Rubin*

The circumstances of Brieant's representation of her codefendants in this case are in many ways similar to those addressed by the Pennsylvania court in *Rubin*. Much like the claims in *Rubin* turning on prior litigation where Stewart represented Alejandro, this case is based on a transaction where Brieant represented her now-codefendants and still-clients the GP Defendants. Many of the same potentially disputed issues are implicated, such as which party made relevant decisions, or whether the GP Defendants might wish to pursue a crossclaim against Brieant if they relied on her advice during the transaction. Here, as in *Rubin*, Brieant (in her capacity as attorney for the GP Defendants) previously asserted that she is not adverse to the GP Defendants because "[t]he GP Defendants have not and will not file a cross-complaint against Ms. Brieant and Ms. Brieant has not and will not file a cross-complaint against her clients." ECF No. 67 at 7. But the GP Defendants' decision as to whether to file such a cross-complaint is necessarily informed by their attorney's advice, and Brieant "cannot be expected to advise [her] client[s] about the availability or merits of a cross-claim against [her]self." *See Rubin*, 2023 WL 2003961, at *27.

Much like the attorney in *Rubin*, Brieant has failed to fully "honor the distinction between [her] representation of [the GP Defendants] and [her] attorney[s'] representation of [her]self." *See id.* at *26 (quoting the trial court). The Court previously ordered briefing by "the parties" to address the apparent conflict of interest implicated by two joint discovery letters, one of which involved discovery requests served on the GP Defendants. *See* ECF No. 99. Brieant failed to file any response on behalf of the GP Defendants, although her own attorneys filed a response on her own behalf. ECF No. 100. The most charitable view is that Brieant elided the distinction between herself and her clients—with the alternative being that she simply failed to comply with an order of the Court.

United States District Court
Northern District of California

1    Moreover, if this case proceeded with the parties represented by their current attorneys, the

2    GP Defendants—like Alejandro in *Rubin*—would have no attorney able to examine or cross-

3    examine Brieant when she testified at a deposition or at trial.

4    As a potential distinction, the Pennsylvania professional conduct rule and comment on

5    which *Rubin* primarily relied are not identical to the California rules applicable here, though they

6    are identical to the ABA Model Rule and equivalent comment.  As discussed above, California's

7    Commission on Professional Responsibility intended Rule 1.7 generally to track the equivalent

8    Model Rule, while carrying over California's more protective standard of informed written

9    consent.  "Especially where there is no conflict with the public policy of California, the Model

10   Rules serve as a collateral source for guidance on proper professional conduct in California."

11   *People v. Donaldson*, 93 Cal. App. 4th 916, 928 (2001); *see also Paul E. Iacono Structural Eng'r,*

12   *Inc. v. Humphrey*, 722 F.2d 435, 440 (9th Cir. 1983) ("Since the California courts cite and apply

13   the Model Code as a source of ethical principles and rules governing California lawyers, . . . the

14   district court's determination that the Model Code is a basis for disqualification under its local rule

15   was not error." ).  Although California did not specifically adopt Comment 10 from the Model

16   Rule, the Court finds no reason to think that California's client-centric approach in adopting its

17   version of Rule 1.7 intended for more lenient treatment of attorneys continuing to represent clients

18   when the "probity of a lawyer's own conduct in a transaction is in serious question."  *See Rubin*,

19   2023 WL 2003961, at *26 (quoting Pa.R.P.C. 1.7, Explanatory Comment 10).  The ABA's

20   conclusion that "it may be difficult or impossible for the lawyer to give a client detached advice"

21   under such circumstances remains persuasive, even where not specifically adopted.  *See id.*

22   Accordingly, all of the conflicts identified by the Pennsylvania court in *Rubin* also weigh

23   in favor of disqualification here.

24          **3.       Additional Conflicts of Interest**

25   This case also implicates conflicts of interest not specifically addressed in *Rubin*, most

26   notably: (a) the conflict of interest regarding purportedly privileged communications that Judge

27   Lin identified in her Order to Show Cause; and (b) potential conflicts that could arise between

28   Brieant and the GP Defendants with respect to settlement.

### a.    Purportedly Privileged Communications

In addition to the conflicts discussed in *Rubin*, this case also implicates the more specific, and now pressing, issue that Judge Lin highlighted in her previous Order: Brieant's purportedly privileged communications with the GP Defendants at the time of the transaction at issue. Brieant has previously represented that such communications are essential to her own defense. ECF No. 48 at 15. As Brieant noted in her response to Judge Lin's Order to Show Cause, Brieant generally "cannot be compelled to disclose attorney-client communications if the GP Defendants, the holder of the privilege, refuse to authorize" her to do so. ECF No. 67 at 11. But that does not insulate the GP Defendants from Brieant's potential self-interest in whether those communications are disclosed, because when she continues to represent them in this litigation, they rely on her advice and advocacy in responding to Plaintiffs' requests for production and in other litigation decisions that might affect whether or to what degree such communications might be disclosed.

Although Brieant now argues that those communications are privileged and should not be discoverable (under the crime-fraud exception or otherwise), if the Court were to disagree and order production, that could raise two troubling questions implicating whether Brieant sufficiently represented the interests of the GP Defendants. First, did Brieant leave out, or otherwise fail to argue persuasively, an argument that could have convinced the Court that the documents were protected from disclosure? Second, if Brieant left out a potentially strong and persuasive argument, was the omission innocent, or was it tainted by her self-interest in disclosing communications favorable to her own case? This Order does not reach the potential application of the crime-fraud doctrine or the strength of Brieant's arguments, because the Court finds it prudent to ensure that all parties are represented adequately before doing so, but the mere opportunity for sandbagging to ensure disclosure illustrates how Brieant faces a conflict of interest with respect to these documents.

Conversely, if—as Brieant now represents to the Court—the communications at issue are benign and demonstrate that neither Brieant nor the GP Defendants engaged in fraud, then the GP Defendants might *also* have an interest in their disclosure, but Brieant is in no position to counsel the GP Defendants as to the fraught and consequential question of whether to waive privilege and

1    produce these documents when Brieant herself has already asserted a personal interest in their

2    disclosure.[7]  Brieant's approach thus far of arguing that the documents are not discoverable might

3    reduce the chance she could be accused of placing her own interest in disclosure over the GP

4    Defendants' privilege, but her caution in avoiding such appearances might itself have superseded

5    the GP Defendants' best interest.  As yet another permutation of the parties' potential interests, it

6    is also possible that withholding the documents serves Brieant's interest in arguing that public

7    policy requires dismissal of claims against her, even if disclosure might benefit the GP

8    Defendants.

9         Brieant has suggested that the GP Defendants could obtain separate counsel to advise them

10   as to whether to make purportedly privileged documents available for in camera review.

11   Specifically, as a "compromise," she is "willing to request Mr. Pellegrini[8] seek independent

12   counsel to advise him on a limited waiver of the privilege to allow for an in-camera review."  ECF

13   No. 100 at 10.  Such an approach would presumably ask the Court to determine, based on the

14   documents' contents, both whether the documents fall within the crime-fraud exception to

15   privilege, and whether they give rise to conflicts of interest that require Brieant's disqualification.

16   Those inquiries implicate core issues at the heart of Plaintiffs' claims that the Court would be

17   required to resolve without either full discovery or informed adversarial argument.  Although

18   some such inquiry might be necessary to resolve the crime-fraud exception, it is at best an

19   imperfect posture for informed decision making.  The question of Brieant's adequacy would also

20   likely require separate counsel to participate not only in advising the GP Defendants as to whether

21   to consent to disclosure, but also in briefing the significance of the documents disclosed.  Notably,

22

23   _____

     [7] To be clear, even if the communications are favorable to the GP Defendants, there may be any

24   number of good reasons for the GP Defendants not to waive privilege, and no adverse inference
     can or should be drawn from a party taking the usual course of defending its privilege.  That the

25   GP Defendants *might* consider waiving privilege is intended only as an example of the sort of
     decision where Brieant has a personal interest that could impair her ability to provide objective

26   advice and to represent fully the interests of the GP Defendants.  Although the Court has no way
     of knowing whether the GP Defendants might wish to waive privilege, the need for advice on that

27   question is not hypothetical: the GP Defendants have already had to decide, with Brieant's advice,
     whether to assert or waive privilege in response to Plaintiffs' requests for production.

28   [8] It is not clear whether the reference only to Pellegrini, and the omission of Groupe PELM, is
     intentional or significant.

United States District Court
Northern District of California

1    despite Brieant's suggestion that she is *willing* to advise at least one of her clients to consult with

2    separate counsel, there is no indication that any such consultation has yet occurred.

3            Even if the GP Defendants sought independent advice, "[t]he advice of outside counsel

4    cannot be relied upon to cure the problem because outside counsel . . . cannot be relied upon to

5    possess the clairvoyance necessary to anticipate the twists and turns [the case] will take in the

6    future." *Abedi v. Sheikhpour*, No. G050361, 2015 WL 9218549, at *5 (Cal. Ct. App. Dec. 16,

7    2015) (unpublished and non-precedential).  Separate counsel might be able to advise the GP

8    Defendants regarding the actual and potential conflicts arising from Brieant's representation of

9    them as the case currently stands, but maintaining informed consent as the case progressed would

10   require constant evaluation by and communication with separate counsel, which is unlikely to be

11   feasible.  The circumstances here differ from potential conflicts between co-parties represented by

12   the same non-party attorney, who could be expected to continue to advise the parties regarding

13   new or changing potential conflicts of interest between them as the case progresses.

14           And even if separate counsel where to handle *all* discovery matters for the GP

15   Defendants—a step Brieant has not indicated she or her clients intend to take—that would not

16   fully ameliorate the conflict stemming from Brieant's interest in disclosure, because other

17   litigation decisions outside the context of discovery could also lead to waiver of privilege and

18   disclosure of the communications.  Hypothetically, for example, the GP Defendants might

19   consider asserting that they acted on advice of counsel as a possible defense to—or mitigation

20   of—either liability generally or the punitive damages Plaintiffs seek.  *See* Compl. (ECF No. 1) at

21   14 (Prayer for Relief).  Such an argument might serve to waive privilege for the GP Defendants'

22   pre-litigation communications with Brieant (an outcome that would be in Brieant's interest if those

23   communications are favorable to her defense) while also seeking to shift blame for any

24   wrongdoing to Brieant (a litigation position that Brieant presumably would prefer to avoid).  *See*

25   *S. Cal. Gas Co. v. Pub. Utils. Comm'n*, 50 Cal. 3d 31, 40 (1990) (recognizing that waiver can

26   occur when "the client has put the otherwise privileged communication directly at issue and that

27   disclosure is essential for a fair adjudication of the action").

28           The Court has no basis to tell whether such a defense would be supported by the facts, and

United States District Court
Northern District of California

18

United States District Court
Northern District of California

even if it were, the GP Defendants might have good reasons not to take that approach.  But when it appears from all parties' submissions that Brieant advised the GP Defendants during the transaction at tissue, it is difficult to imagine how Brieant could now advise the GP Defendants on decisions related to the relevance of her previous advice—which seem likely to arise in one form or another—without implicating her own potentially complex interests as a codefendant.

Even setting aside those hypotheticals, there remains the direct conflict that Judge Lin previously identified.  The GP Defendants have asserted attorney-client privilege over their communications with Brieant.  According to Brieant's previous Motion to Dismiss, that assertion of "attorney-client privilege constrains Attorney Brieant's ability to defend herself" by blocking use of the most direct evidence "of what Attorney Brieant 'knew,'" an issue at "the heart of" Plaintiffs' claims against her.  ECF No. 48 at 15.  Such direct adversity of interests between attorney and client is an actual conflict requiring disqualification.

### b.    Conflicts Regarding Settlement

As yet another apparent conflict, Brieant and the GP Defendants may have meaningfully different interests when it comes to settlement.  To use a hypothetical example, even if the GP Defendants believe they are likely to prevail, they might (or might not) consider a settlement to avoid the cost and risk of litigation, while Brieant might (or might not) wish to pursue vindication at trial to avoid any stain on her professional reputation.  Conversely, if Defendants are somewhat less confident in their position, the GP Defendants might still be willing to take the risk of an adverse judgment, while Brieant might have stronger incentive to avoid even a small chance of a fraud judgment against her and the serious implications that such a judgment might have on her continued ability to practice law.  Under these circumstances, it would be difficult for Brieant to provide the GP Defendants with dispassionate advice on potential settlement, which is a core responsibility of litigation counsel.

Again, those specific possibilities are only hypothetical, and the parties' interests might align or diverge in other ways.  California courts have held that a "motion to disqualify will not be granted when only a hypothetical conflict exists." *Fox Searchlight Pictures, Inc. v. Paladino*, 89 Cal. App. 4th 294, 302 (2001).  In *Fox Searchlight*, however, there was "no showing the

1    hypothetical settlement is a real possibility or that Fox has any evidence on which to amend its

2    complaint and bring in Paladino's attorneys as defendants." *Id.* Here, in contrast, Brieant is

3    already a defendant, and although the specific possible interests the Court has identified are

4    hypothetical, the potential for a settlement affecting Defendants' potentially divergent interests is

5    far more real than in *Fox Searchlight*—where the attorneys were not parties to the case—given

6    both the parties' stated interest in settlement discussions and the large percentage of federal civil

7    cases that end in settlement. *See* ECF No. 71 (Case Management Statement) at 13 ("Defendants

8    would agree to a settlement conference . . . ."); *see also, e.g.*, *Godo Kaisha IP Bridge 1 v.*

9    *Omnivision Techs., Inc.*, 246 F. Supp. 3d 1001, 1004 n.5 (D. Del. 2017) ("[A]ccording to some

10   scholars, more than 97% of patent suits are settled before trial, a figure consistent with national

11   statistics about civil suits in general." (cleaned up)); *Martin v. Long Island R. Co.*, 63 F.R.D. 53,

12   54 (E.D.N.Y. 1974) ("An overwhelming percentage of civil cases are settled.").

13           It would of course be inappropriate for the Court to inquire into the parties' actual views

14   on settlement, as would be necessary to determine the extent to which their interests are (and

15   remain) aligned. But the confidentiality of settlement discussions underscores the need for

16   prophylactic disqualification, because the Court would have no insight into if or when such issues

17   developed into a direct conflict. At the very least, there is real possibility of settlement

18   discussions placing Brieant "in a position where [she] may be required to choose between

19   conflicting duties or attempt to reconcile conflicting interests" in a manner that the ethical rules

20   are intended to avoid. *See Woods*, 149 Cal. App. 3d at 936.

21           **4.        Consequences of Conflicts of Interest and Lack of Waiver**

22           Under California law, an attorney must be disqualified—notwithstanding any waiver by

23   the clients—from dual representation posing an actual conflict due to adverse interests in a hearing

24   or proceeding. ECF No. 66 at 3 (quoting *Klemm v. Superior Ct.*, 75 Cal. App. 3d 893, 898

25   (1977)). "As a matter of law a purported consent to dual representation of litigants with adverse

26   interests at a contested hearing would be neither intelligent nor informed." *Klemm*, 75 Cal. App.

27   3d at 898. California courts have therefore established "a per se rule against waivability when it

28   comes to actual, as distinct from merely potential, conflicts." *Abedi*, 2015 WL 9218549, at *5.

United States District Court
Northern District of California

The issue of purportedly privileged communications meets that standard: Brieant has previously represented that disclosure of her communications with the GP Defendants is essential to her defense, and the GP Defendants now oppose disclosure of those communications.  The fact that Brieant has chosen to pursue the GP Defendants' stated interest in confidentiality over her own stated interest in disclosure does not change the fact that a true conflict exists between those interests.  *See Am. Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton*, 96 Cal. App. 4th 1017, 1040 (2002) ("[A]n attorney should not so conduct himself as to be open to the temptation of violating his obligation of fidelity and confidence." (quoting *Anderson v. Eaton* 211 Cal. 113, 117 (1930))).  That conflict alone is grounds for disqualification under California law, without reaching any question of possible waiver.

This case also raises several conflicts of interest that might, at least for the sake of argument, be characterized as "potential," including questions of whether the GP Defendants should file a crossclaim against Brieant, whether the GP Defendants should assert that they acted on advice of counsel, how Brieant's role in the transaction should be framed more generally, if or how the GP Defendants will examine Brieant at her deposition or at trial, and whether Brieant can dispassionately advise the GP Defendants regarding potential settlement.  Each of those issues presents a "significant risk" of materially limiting Brieant's ability to provide impartial counsel. *See* Cal. R. Prof'l Conduct 1.7(b).

Under California law and rules of professional responsibility, such conflicts could *perhaps*[9] be waived.  Judge Lin previously made clear, however, that if Defendants did not submit "proof of . . . informed written consent" with their response to the Order to Show Cause, "the

---

[9] It is not obvious that the process for an informed waiver of conflicts between multiple clients of an attorney applies equally to conflicts between the clients and the attorney herself, particularly when an attorney has a direct stake as a co-party to litigation.  An attorney can reasonably be expected to explain to multiple clients the ways in which their interests might conflict, the advantages and disadvantages of proceeding despite such potential conflicts, and when a potential conflict might develop into an actual conflict.  Advising clients as to potential conflicts with the attorney's own interests as a party to litigation, however, places the attorney in a more difficult position, calling into question whether consent obtained under such circumstances should be deemed sufficiently informed.  The Court need not reach the question of whether or when such conflicts are waivable under California law, however, because there is no indication that the GP Defendants have waived them.

1    Court will conclude that no such informed written consent has been provided authorizing Brieant's

2    continued representation of the GP defendants." Dkt. No. 66 at 5. No such proof was provided.

3    The Court therefore concludes that the GP Defendants have not provided informed consent to

4    Brieant's continued representation, and that even potential conflicts are grounds for

5    disqualification under California law.

6            Responding to the Order to Show Cause, Brieant argued on behalf of the GP Defendants

7    that Judge Lin's inquiry into whether the GP Defendants waived conflicts improperly intruded on

8    privileged communications. ECF No. 67 at 12–14. But Brieant has cited no case holding that

9    evidence of such consent is privileged, and her position that courts have no right to inquire as to

10    whether such consent has been given would render Rule 1.7's informed consent requirement

11    toothless. Courts have a responsibility not only to "review[] conflict waivers executed by all

12    defendants to determine whether each waiver was voluntary, knowing, and intelligent, but also [to]

13    ensur[e] that defense counsel thoroughly explained to each client all potential conflicts and the

14    risks of moving forward with counsel that have, at a minimum, a potential conflict of interest."

15    *Ballew v. City of Pasadena*, No. CV 18-0712 FMO (ASx), 2020 WL 4919384, at *7 (C.D. Cal.

16    Apr. 13, 2020). Brieant's refusal to provide any evidence that the GP Defendants provided

17    informed consent prevents the Court from carrying out that responsibility.

18            As Judge Lin previously noted, a party's consent to representation or waiver of a potential

19    conflict is not itself a privileged attorney-client communication. ECF No. 66 at 4–5 (citing *In re*

20    *Michaelson*, 511 F.2d 882, 888 (9th Cir. 1975); *Ballew v. City of Pasadena*, No. CV 18-0712

21    FMO (ASx), 2020 WL 13584506, at *2 (C.D. Cal. May 18, 2020)); *see also*, *e.g.*, *Lee v. Charles*,

22    No. 12 CIV. 7374 JFK, 2013 WL 5637658, at *3 (S.D.N.Y. Oct. 16, 2013) (ordering counsel to

23    file affidavits of informed consent to dual representation of multiple codefendants in a personal

24    injury case). A conflict waiver may be privileged *if* it also includes legal advice, but that does not

25    prevent either the waiver's submission for in camera review, or the public filing of declarations by

26    the clients attesting that they wish to continue with counsel despite a conflict. *See Ballew v. City*

27    *of Pasadena*, No. CV 18-0712 FMO (ASx), 2020 WL 13584507, at *3 (C.D. Cal. Nov. 12, 2020).

28    But "[i]n the absence of unusual circumstances, the fact of a retainer [and] *the conditions of*

United States District Court
Northern District of California

1    *employment . . . do not come within the privilege of attorney-client relationship."  *In re*

2    *Michaelson*, 511 F.2d at 888 (emphasis added; citations omitted).

3            Brieant asserted in her response to Judge Lin's Order to Show Cause that *Michaelson* did

4    not specifically address a conflict waiver, but courts routinely require clients' waiver of conflicts

5    or consent to potentially conflicted representation to be submitted for review, and parties routinely

6    submit such documents.  *See, e.g.*, *Harish v. Arbit*, No. CV 21-11088-EP-AME, 2025 WL 354434,

7    at *9 n.7 (D.N.J. Jan. 31, 2025); *Ixta v. County of Ventura*, No. 2:22-cv-02468-MCS-AFM, 2022

8    WL 19237952, at *2 (C.D. Cal. Oct. 17, 2022); *Almont Ambulatory Surgery Ctr., LLC v.*

9    *UnitedHealth Grp., Inc.*, No. CV-1402139-MWF (VBKx), 2014 WL 12589658, at *9 (C.D. Cal.

10   June 16, 2014); *Neill v. All Pride Fitness of Washougal, LLC*, No. C08-5424RJB, 2009 WL

11   1255101, at *2 (W.D. Wash. May 4, 2009); *Jackson v. Rohm & Haas Co.*, No. CIV.A. 05-4988,

12   2008 WL 3930510, at *4 (E.D. Pa. Aug. 26, 2008); *see also People v. Doan*, No. F036530, 2002

13   WL 1938953, at *12 (Cal. Ct. App. Aug. 22, 2002) ("Judge Stuart properly conducted an in

14   camera hearing, advised appellant and Ms. Doan of their right to conflict-free representation, and

15   obtained the appropriate waivers from the parties.").  Again, Brieant has identified no case to the

16   contrary.

17           In the absence of any evidence that the GP Defendants waived conflicts or provided

18   informed written consent to Brieant's representation of them—even after Judge Lin's Order that

19   failure to provide such evidence would result in a conclusion that consent was not provided, ECF

20   No. 66 at 5—the Court is left to conclude that they have not done so.  Accordingly, even potential

21   conflicts between Brieant and the GP Defendants require her disqualification under Rule 1.7(b).

22           **B.      Dual Status as Attorney and Witness: California Rule 3.7**

23           California rules allow an attorney to serve as an advocate in a case in which the attorney

24   will also testify as a witness to disputed material facts upon the "informed written consent" of the

25   attorney's client, or under certain other circumstances not applicable here.  Cal. R. Prof. Conduct

26   3.7.[10]  Even if consent has been obtained, a court may disqualify an attorney upon a "convincing

27

28   _____
     [10] The *Rubin* case discussed above also noted an apparent violation of Pennsylvania's Rule 3.7,
     which prohibits an attorney from "act[ing] as an advocate at a trial in which the lawyer is likely to

United States District Court
Northern District of California

demonstration of detriment to the opponent or injury to the integrity of the judicial process," although courts will usually respect the client's consent as sufficient to allow an attorney to serve as both advocate and witness. *Smith, Smith & Kring v. Superior Ct. (Oliver)*, 60 Cal. App. 4th 573, 579 (1997).

This rule on its face limits the ability of counsel who will be testifying to represent a client "at trial." Courts have construed the rule as also encompassing representation of the client at pretrial evidentiary hearings where counsel is likely to testify, as well as other pretrial proceedings where counsel's participation is likely to reveal their role as an advocate to the jury, specifically including taking and defending depositions. *Doe v. Yim*, 55 Cal. App. 5th 573, 583 (2020). But Rule 3.7 does not require disqualification from "*all* pretrial activities, including behind-the-scenes activities unlikely to pose any risk of fact finder confusion, such as preparing a witness list or motion in limine." *Lopez v. Lopez*, 81 Cal. App. 5th 412, 425 (2022).

The Court is satisfied that Brieant's testimony is likely to be necessary and would relate to disputed issues of material fact. All parties' allegations in this case indicate that Brieant communicated with Plaintiffs' counsel on behalf of the GP Defendants during the events at issue. A recent discovery letter that Brieant filed on behalf of Groupe PELM asserts that credibility disputes regarding what was said in a telephone call between Brieant and Plaintiffs' counsel Williams require discovery into the circumstances of a previous case where Williams brought a claim of fraud on behalf of a different client. *See* ECF No. 115 at 1–2. Brieant argues there that Williams's credibility is at issue, but in doing so, she demonstrates that her own testimony will be needed too. Judge Lin also denied Brieant's motion to dismiss the claims against her personally, and her status as a defendant in the case whose own conduct is directly at issue further indicates that her testimony will be necessary. There is no real question that Brieant will be called to testify as to disputed issues in this case.

---

be a necessary witness" under most circumstances. Pa.R.P.C. 3.7(a); *see Rubin*, 2023 WL 2003961, at *27. That rule, which is identical to the ABA Model Rule, differs from California's version in that it lacks an exception for the client's consent. Since Brieant and the GP Defendants have not established the GP Defendants' informed written consent to Brieant's complex role in this case, that distinction is immaterial here.

1    On its face, Rule 3.7 therefore requires Brieant's disqualification from serving as counsel

2    at trial unless the GP Defendants provided informed written consent for her to serve as both their

3    attorney and a material witness.  As discussed above in the context of conflicts of interest, there is

4    no evidence that they have done so, even after Judge Lin ordered them to provide such evidence.

5    Accordingly, Brieant must be disqualified from serving as counsel to the GP Defendants in

6    proceedings that could cause confusion for the finder of fact, including but not limited to

7    depositions, evidentiary hearings, and trial.

8    In an abundance of caution, Court nevertheless addresses the factors that California courts

9    have held relevant to whether an attorney who is also testifying as a witness should be disqualified

10   *notwithstanding* a client's informed consent.  "In exercising its discretion to disqualify counsel

11   under the advocate-witness rule"—at least where informed written consent has been provided by

12   the client—"a court must consider:"

> (1) whether counsel's testimony is, in fact, genuinely needed; (2) the possibility opposing counsel is using the motion to disqualify for purely tactical reasons; and (3) the combined effects of the strong interest parties have in representation by counsel of their choice, and in avoiding the duplicate expense and time-consuming effort involved in replacing counsel already familiar with the case.

17   *Lopez v. Lopez*, 81 Cal. App. 5th 412, 424 (2022) (cleaned up).

18   The Court is satisfied that Brieant's testimony is "genuinely needed," *see id.*, as discussed

19   above in relation to the likelihood that she will testify to disputed material facts.  The Court is also

20   satisfied that the conflict issue here does not implicate any improper tactical challenge by

21   opposing counsel, when Judge Lin raised the issue sua sponte.

22   For the third factor, the Court weighs the GP Defendants' interest in continuing with

23   counsel of their choice, and the potential delay and inefficiency of replacing her as counsel at this

24   stage of the case.  The GP Defendants have made no showing of any particular interest in

25   continuing with Brieant as their attorney, or even that they are aware of the issues implicated by

26   her concurrent status as their codefendant and a material witness.  The Court recognizes that the

27   GP Defendants may face some degree of prejudice in being deprived of their counsel of choice,

28   who is intimately familiar with the facts of the case (in large part by virtue of her own involvement

in them).  But in the GP Defendants' response to Judge Lin's Order to Show Cause, Brieant asserted only generic interests that any party might have in its chosen counsel.  ECF No. 67 at 9–10.  Such interests carry some weight, but do not overcome the substantial risk of juror confusion here—not to mention the significant conflicts of interest discussed in the preceding section—particularly when it is not clear that the GP Defendants have made an informed decision.  And although replacing counsel might cause some delay, litigation thus far has been limited to challenges to the pleadings and early discovery disputes, so the burden on new counsel to take over the case appears manageable.

Against the GP Defendants' at-best-unexceptional interest in counsel of their choice and avoiding delay, the Court weighs the risk of jury confusion that Rule 3.7 is intended to avoid.  Brieant's not merely dual, but here *threefold* status as attorney, witness, and party poses substantial risk of confusion to the jury, with potential to prejudice any and all parties.

As in a more typical case implicating the advocate-witness rule, Brieant's complex role in the case "pose[s] the risk that the jury would be misled into accepting [her] assertions during closing argument as evidence based on her personal knowledge as a witness."  *Yim*, 55 Cal. App. 5th at 584.  That potential confusion is not fair to Plaintiffs and Third-Party Defendants.  There is also risk that if the jury finds Brieant liable on Plaintiffs' claims or her testimony less than credible, the jury might draw adverse inferences against the GP Defendants based on Brieant's continued representation of them, in a manner unfair to the GP Defendants.  And there is risk that if the jury finds the GP Defendants liable, it might unfairly impute their liability to Brieant—who may be representing the GP Defendants here based on a perceived obligation or duty of loyalty—if she continues to represent them and argue on their behalf at trial.  *See Woods*, 149 Cal. App. 3d at 936 (recognizing that one purpose of ethical limitations on concurrent representations is to protect attorneys from being placed in untenable positions).  More generally, a jury is likely to have difficulty differentiating not only Brieant's testimony as a witness from her arguments on behalf of the GP Defendants, but also Brieant's arguments on behalf of the GP Defendants from Brieant's attorneys' arguments on behalf of Brieant.  The potential effects of such confusion, although difficult to predict in advance, are inconsistent with the fair and effective administration

of justice.

Rule 3.7 of the California Rules, along with related considerations of juror confusion, therefore requires Brieant's disqualification at least for the purpose of trial, evidentiary hearings, and depositions.

### C.   Inherent Authority

Finally, although this Court's local rules incorporate California rules of professional responsibility, the Court has inherent responsibility and authority even beyond those rules both to ensure the fair administration of justice and to avoid the appearance of impropriety.  *See Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996) ("Federal courts have inherent powers to manage their own proceedings and to control the conduct of those who appear before them."). The court's powers include the authority to "disqualify an attorney for not only acting improperly but also for failing to avoid the appearance of impropriety."  *Id.* (quoting *Gas-A-Tron*, 534 F.2d at 1324–25).  This Court agrees with the Pennsylvania court in *Rubin* that a defendant attorney serving as counsel to a codefendant, whom the attorney also represented during the events giving rise to the claim, is "about as profound a conflict as you can have," at least short of direct adversity.  2023 WL 2003961, at *27.  That is enough to warrant disqualification under the Court's inherent authority, even if Brieant's continued representation of her codefendants did not violate her responsibilities under state rules of professional conduct.[11]

The Supreme Court has recognized, in the context of criminal cases, that a "district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses."  *Wheat v. United States*, 486 U.S. 153, 163 (1988); *see also People v. Peoples*, 51 Cal. App. 4th 1592, 1599 (1997) (affirming disqualification on the trial court's own motion of a criminal defense attorney who was the defendant's sister, the victim's ex-wife, and the

---

[11] A different outcome might be appropriate in cases where the parties' interests are entirely identical—for example, if an attorney were to represent herself and her spouse in a lawsuit seeking to hold them liable for a dangerous condition on their shared property.  This Order does not reach such questions.

mother of percipient witnesses, primarily to protect "the integrity of the judicial process").

The considerations in civil cases are not identical, but even in the civil context, "[t]he authority of federal courts to disqualify attorneys derives from their inherent power to preserve the integrity of the adversary process." *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 241 (2d Cir. 2016) (civil forfeiture action) (quoting *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005)); *see also Ballew*, 2020 WL 4919384, at *2 (quoting *Prevezon Holdings*); *Greenfield MHP Assocs., L.P. v. Ametek, Inc.*, No. 3:15-cv-01525-GPC-AGS, 2018 WL 538961, at *3 (S.D. Cal. Jan. 24, 2018) (same). "Although . . . decisions on disqualification motions often benefit from guidance offered by the American Bar Association (ABA) and state disciplinary rules, . . . such rules merely provide general guidance . . . ." *Hempstead Video*, 409 F.3d at 132.

This Court's Civil Local Rule 11-4 specifically incorporates California standards of professional conduct, but that rule does not purport to be the sole source of authority for attorney disqualification, nor to limit the Court's inherent authority to disqualify counsel based on apparent conflicts of interest or threats to the integrity of the judicial process that might fall outside the scope of those professional rules. And even if this Court is *limited to* "apply[ing] state law in determining matters of disqualification," as the Ninth Circuit has suggested but not squarely addressed, *see Los Angeles*, 223 F.3d at 995, California law does not appear to constrain courts' authority to disqualify counsel to violations of specific rules of professional conduct, if a court determines that disqualification is necessary to protect the integrity of the judicial process, *see Peoples*, 51 Cal. App. 4th at 1597–99 (affirming disqualification without citation to any professional rule).

Accordingly, even if Brieant's continued representation of her codefendants did not violate specific California Rules of Professional Conduct, the integrity of the judicial process nevertheless requires her disqualification for all of the reasons discussed above.

## V.    ORDER TO SHOW CAUSE REGARDING PLAINTIFFS' COUNSEL

Brieant previously asserted that if she were disqualified, Plaintiffs' counsel would also need to be disqualified, because they were also involved in the underlying transaction and could be

named as third-party defendants.  ECF No. 67 at 8–9.  At the time, Plaintiffs' counsel were not yet parties to the case.  Since then, however, Groupe PELM has filed third-party complaints against both of Plaintiffs' attorneys, Jimmie Williams and Aaron McKown, as well as McKown's law firm.  ECF Nos. 69-2, 90.  Williams answered the third-party complaint against him, but McKown and his firm have filed a motion to strike the claims against them under California's anti-SLAPP law, ECF No. 105, which Judge Lin has taken under submission, *see* ECF No. 118.

Judge Lin previously considered Brieant's motion to dismiss before fully resolving Brieant's conflicts of interest.  *See generally* ECF No. 68.  Allowing a preliminary challenge to claims against a party-attorney before ruling on the conflicts that arise from such dual status reduces the potential for misuse of frivolous claims to disqualify an opponent's chosen counsel. The undersigned therefore recommends that Judge Lin resolve McKown's pending Motion to Strike before considering whether McKown should also be disqualified.  This Order should not be construed as commenting in any way on the merits of that Motion to Strike.

Williams, however, chose to forego a challenge on the pleadings to the third-party claims against him, and instead filed an answer.  ECF No. 76.  Like Brieant, Williams appears to have been involved in the transaction underlying this litigation, and at least some of the same considerations that require Brieant's disqualification may apply to Williams.  Williams and Plaintiffs are therefore ORDERED TO SHOW CAUSE why Williams should not be disqualified from serving as Plaintiffs' counsel while he is also a party to this case, by filing either a joint response or separate responses, not exceeding ten pages, no later than March 14, 2025.

## VI.    CONCLUSION

Brieant is DISQUALIFIED, sua sponte, from continuing to represent the GP Defendants, except that "papers may continue to be served on [Brieant] for forwarding purposes, unless and until the [GP Defendants] appear[] by other counsel or pro se."  *See* Civ. L.R. 11-5(b).  Discovery will remain stayed for at least twenty-one days to allow the GP Defendants time to obtain new counsel.  The undersigned recommends that Judge Lin stay all other proceedings during that time as well.

The parties are ORDERED to file a joint status report no later than March 21, 2025.  If the

GP Defendants have not yet obtained new counsel by that deadline, Brieant may represent them for the limited purpose of submitting a status report, and the parties shall address their views on whether more time is appropriate or how else the Court should proceed.  If new counsel has appeared, the GP Defendants shall address whether they wish to rest on Brieant's past briefing of pending matters or if they believe new or supplemental briefing is appropriate, or if a short extension of time is necessary to allow new counsel to make that decision.

Plaintiffs and Williams are ORDERED TO SHOW CAUSE why Williams should not be disqualified as counsel for substantially the same reasons as Brieant, by filing a joint response or separate responses no later than March 14, 2025 as discussed above.

**IT IS SO ORDERED.**

Dated: February 28, 2025

LISA J. CISNEROS
United States Magistrate Judge

United States District Court
Northern District of California