UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABN CORPORATION, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>GROUPE PELM INTERNATIONAL CORPORATION, et al.,<br><br>        Defendants. | Case No. 23-cv-00004-RFL (LJC)<br><br>**ORDER FOR SUPPLEMENTAL BRIEFING REGARDING MOTION TO COMPEL AND POTENTIAL MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 162 |

## I.  INTRODUCTION

At the hearing on September 16, 2025, the Court and the parties discussed the possibility of Plaintiffs seeking default judgment against defaulted Defendants Christian Pellegrini and Groupe PELM International Corporation (collectively, the GP Defendants) before the Court resolves whether Plaintiffs have made a prima facie showing that the crime-fraud exception applies to otherwise privileged communications between the GP Defendants and non-defaulted Defendants Victoria Brieant and her law office (collectively, Brieant).  The Court suggested that such a sequence might have value to avoid addressing a core issue of the merits in the context of a discovery dispute.

Plaintiffs' counsel represented that based on his research, he did not believe it was appropriate to move for default judgment as to only some defendants in a case where other defendants remained active, though Plaintiffs did not address that issue in their briefs.  Brieant's counsel noted that Brieant's opposition brief addressed the issue in a footnote.  *See* ECF No. 165 at 7 n.5.

Two interrelated procedural questions are at issue.  First, can the Court properly consider a motion for default judgment against the GP Defendants while Brieant continues to defend the

1  related claims against her? The parties seem to have agreed, at least going into the hearing, that
2  the answer to that question is "no," but further briefing would be useful to allow the Court to
3  evaluate that question. Second, and more directly in dispute, what effect does the GP Defendants'
4  default have on Brieant's assertion of attorney-client privilege on their behalf, and on Plaintiffs'
5  assertion of the crime-fraud exception in response?

6  Finally, the parties have not addressed an underlying question of whether the attorney-
7  client privilege applies to Brieant's role in the transaction at issue, and should address that before
8  greater effort is expended to evaluate a potential exception.

9  The parties are therefore directed to submit supplemental briefs as discussed further below.

## II. ISSUES TO BE ADDRESSED

### A. Propriety of an Early Motion for Default Judgment

"[W]here a complaint alleges that defendants are jointly liable and one of them defaults, judgment should not be entered against the defaulting defendant until the matter has been adjudicated with regard to all defendants. It follows that if an action against the answering defendants is decided in their favor, then the action should be dismissed against both answering and defaulting defendants." *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 532 (9th Cir. 2001) (citing *Frow v. De La Vega,* 82 U.S. (15 Wall.) 552, 554 (1872)) (citations and footnote omitted). The same principle applies where it would be "incongruous" to enter default judgment against one defendant based "on a legal theory rejected" as to another active defendant, even if the plaintiff did not seek to hold the two defendants jointly liable. *Id.* The Ninth Circuit has held that a court erred in entering enter partial final judgment against a defaulted defendant (as a matter of discretion under Rule 54(b) of the Federal Rules of Civil Procedure) "that directly contradicted its earlier ruling in the same action" as to other non-defaulted defendants. *Id.* at 532–33.

The focus of *First T.D.* and the authority on which it relies appears to be on final entry of judgment, without necessarily addressing whether adjudication of a motion for default judgment while other defendants remain active is always improper. *See id.* at 532 ("We conclude that the bankruptcy court abused its discretion by *certifying as final* default judgments against Defaulting Defendants that were inconsistent with the bankruptcy court's earlier summary judgment ruling

. . . ." (emphasis added).  Of course, if final judgment would not be entered until later, and might depend on the outcome of claims against other defendants, that limits the utility of an early motion for default judgment.

On the other hand, such a process could serve to place a question of the merits of the case before the presiding judge in the first instance.  Before the Court could draw any inference of fraud from the GP Defendants' default, the Court presumably would need to determine that Plaintiffs have sufficiently alleged fraud by the GP Defendants.  Such a decision, made in the context of the present discovery dispute between Plaintiffs and Brieant, would all but decide the question of whether default judgment should be entered against the GP Defendants—a matter outside the scope of Judge Lin's referral of discovery matters to the undersigned magistrate judge.

A motion for default judgment at this juncture could also avoid additional work later in the case if any final outcome of Plaintiffs' claims against Brieant is consistent with the ruling on the motion for default judgment—for example, if default judgment is granted and Plaintiffs' ultimately prevail on their claims against Brieant, or Brieant prevails on grounds unrelated to the merits of Plaintiffs' claims against the GP Defendants (e.g., lack of personal knowledge of or involvement in any wrongdoing), or if default judgment is denied.  But it could also turn out to have been unnecessary, if the resolution of Plaintiffs' claims against Brieant precludes entry of final judgment against the GP Defendants.

The parties are therefore directed to address in supplemental briefs whether such a process is permissible, and if so, whether it is advisable.

### B.    Effects of the GP Defendants' Default

A related question is what effect, if any, the GP Defendants' default has on Brieant's invocation of attorney-client privilege.

Plaintiffs argue that because allegations against a defaulting defendant are deemed admitted, the GP Defendants' defaults serve to admit allegations that they engaged in fraud in the underlying transaction, and thus that the crime-fraud exception applies to any otherwise privileged communications they had with Brieant about the transaction.  In a paragraph of her opposition brief, Brieant asserts that "where less than all defendants have defaulted, the allegations are only

3

1 [taken as] true as to those defaulting defendants." ECF No. 165 at 7 (quoting *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1000 (N.D. Cal. 2001), though Brieant miscites this as a decision by the Ninth Circuit). *Shanghai Automation* cites no authority for that assertion, but its merit is intuitive: one party should not lose the ability to defend itself merely because another party defaulted. This "venerable principle" can be traced back through more than two hundred years of caselaw. *See Pfanenstiel Architects, Inc. v. Chouteau Petroleum Co.*, 978 F.2d 430, 432–33 (8th Cir. 1992).

> In the same cause, a fact, not controverted by one party, who does not appear, and therefore, as to him taken for confessed, ought not, on that implied admission, to be brought to bear upon another who does appear, does controvert, and does disprove it.

*Id.* at 433 (quoting *The Mary*, 13 U.S. (9 Cranch) 126, 143 (1815)).

That said, the context of this case, where Plaintiffs seek to use purported admissions as a basis for a privilege exception, may implicate different considerations. As Brieant notes, "***The client, not the attorney***, is the holder of the privilege. (Cal. Evid. Code § 953(a).)" ECF No. 165 at 10 (emphasis in original). Brieant may (and indeed must) properly invoke her clients' privilege if it applies, but she has no personal interest in the privilege. For example, she could neither prevent the GP Defendants from waiving it nor continue to withhold documents or testimony after such a waiver. Accordingly, applying admissions based on the GP Defendants' default to establish an exception to a privilege that exists solely for their benefit may not present the same concerns about fairness as using such admissions to impose *liability* against Brieant. Though Brieant is the party asserting the privilege, she does so on the GP Defendants' behalf. Any admission that is used to show that the privilege does not apply might be better characterized as "brought to bear upon" the GP Defendants than upon Brieant. *See Pfanenstiel Architects*, 978 F.2d at 433 (quoting *The Mary*, 13 U.S. at 143).

The parties are therefore directed to address in greater detail whether the Court can properly consider the GP Defendants' admissions through their default in addressing Brieant's assertion of the GP Defendants' attorney-client privilege and potential exceptions thereto.

4

### C. Application of Attorney-Client Privilege

The parties' briefs on the Motion to Compel address questions of exceptions to and waiver of the attorney-client privilege, but do not meaningfully address the underlying question of whether the privilege applies in the first place to the communications at issue. *See, e.g.*, ECF No. 165 (Opp'n) at 9–16. Plaintiffs may have erred in failing to raise this issue, but it is ultimately Brieant's burden as the party invoking the privilege to make a prima facie showing that it applies. *See Costco Wholesale Corp. v. Superior Ct.*, 47 Cal. 4th 725, 733 (2009).

"[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. California law therefore applies to issues of privilege in this litigation, at least absent any showing that the law of some other state should apply. *See Holley v. Gilead Scis., Inc.*, No. 18-cv-06972 JST (JSC), 2021 WL 2371890, at *2 (N.D. Cal. June 10, 2021) (applying California choice-of-law rules to conclude that California privilege law applied in a case with "factual connections to multiple states," where no party introduced evidence of a conflict of laws or another state's governmental interest in applying its own law).

Under California law, the attorney-client privilege is governed by statute and applies to confidential communications between client and lawyer during the course of the attorney-client relationship. *See* Cal. Evid. Code §§ 911, 954, 952. "The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise." *Costco*, 47 Cal. 4th at 733. "Once that party establishes facts necessary to support a prima facie claim of privilege," then the privilege is presumed to apply, and "the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." *Id.*

"[T]o determine whether a communication is privileged, the focus of the inquiry is the dominant purpose of the relationship between the parties to the communication." *Clark v. Superior Ct.*, 196 Cal. App. 4th 37, 51 (2011). Where the "dominant purpose of the relationship between the parties to the communication was one of attorney-client, the communication is protected by the privilege." *Id.* "[T]he relevant inquiry is not the content of the communication

5

1  but is instead the relationship of the communicators." *Id.* at 52. If "the communications were
2  made during the course of an attorney-client relationship"—as opposed to a relationship with
3  some other "dominant purpose"—then "the communications, including any reports of factual
4  material, would be privileged, even though the factual material might be discoverable by some
5  other means." *Costco*, 47 Cal. 4th at 740. Even when an attorney-client relationship is
6  established, however, "the inquiry turns on . . . the link between the content of the communication
7  and the types of communication that the attorney-client privilege was designed to keep
8  confidential. For a communication to be privileged, it must be made for the purpose of the legal
9  consultation, rather than some unrelated or ancillary purpose." *L.A. Cty. Bd. of Supervisors v.*
10 *Superior Ct.*, 2 Cal. 5th 282, 297 (2016) (adopting the reasoning of a concurring opinion in
11 *Costco*).

12 "It is settled that the attorney-client privilege is inapplicable where the attorney merely acts
13 as a negotiator for the client, gives business advice or otherwise acts as a business agent." *Zurich*
14 *Am. Ins. Co. v. Superior Ct.*, 155 Cal. App. 4th 1485, 1504 (2007) (citation omitted). By merely
15 "conveying the client's position to a contracting party," an attorney "acts as a business agent,"
16 such that neither privilege nor work product protection applies to communications with the client
17 made for that purpose. *See also Aetna Cas. & Sur. Co. v. Superior Ct.*, 153 Cal. App. 3d 467, 475
18 (1984).

19 Here, Brieant describes her role as follows:

> By any measure, Attorney Brieant had an exceedingly limited involvement in the underlying transaction, which Plaintiffs cannot and do not actually deny. Again, GP and Pellegrini (collectively "GP Defendants") retained Attorney Brieant "in this transaction for only two very narrow issues": (1) to verify proof of funds and (2) to facilitate communications with Attorney Williams concerning an inspection of the product. [ECF 126-1, ¶ 20.]
>
> It was only after GP and RS Medical had already negotiated the terms of the Commercial Invoice and, and after Pellegrini confirmed the $50,000 deposit was wired and had cleared into the GP account at Scotia Bank on November 15, 2022, that Pellegrini first engaged Attorney Brieant to handle the first item: to contact Attorney Williams . . . to verify that RS Medical had the [funds] to complete the transaction.

28 ECF No. 165 at 3–4 (first set of brackets in original; internal quotation marks omitted). She goes

on to explain how that she engaged in further communications with Willaims at Pellegrini's direction. *Id.* at 4–5. "Most responses from Attorney Brieant [in an exchange of messages with Williams] consisted of informing Attorney Williams that she was merely a conduit for conveying his messages to Pellegrini, and that she was otherwise waiting on instructions from Pellegrini in facilitating the inspection." *Id.* at 4.

Based on that description, Brieant's primary role in the transaction appears to have been as a business agent or "mere conduit," not providing legal services. If that is the case, it is difficult to see how most of her communications with the GP Defendants regarding the transaction would be privileged.[1] The parties are therefore directed to address whether privilege applies here at all.

### III.  OTHER ISSUES (TO ADDRESS AT A LATER STAGE)

As discussed at the September 16, 2025 hearing, the Court has concerns about the manner in which the parties briefed the present Motion. The Motion and Opposition are supported in part by extensive "separate statements" that consist of hundreds of pages of largely identical passages of legal argument that have been copied and pasted throughout. ECF Nos. 162-2 (Plaintiffs' Separate Statement of Requests for Production of Documents and Special Interrogatories, Per Local Rule 37-2), 165-2 (Defendants' Response and Objection to Plaintiffs' Separate Statement of Request for Production of Documents and Special Interrogatories, Per Local Rule 37-2). In addition, the briefs and "separate statements" lack citations to supporting evidence. *See* Civ. L. R. 7-5 ("Factual contentions made in support of or opposition to any motion must be supported . . . by appropriate references to the record.") The parties have misapprehended Civil Local Rule 37-2's requirements for a motion to compel further responses to discovery requests. The rule does not authorize the filing of separate statements or excuse the parties from the page limits that ordinarily apply to memoranda in support of or opposition to a motion. *See* Civ. L.R. 7-4(b).

Though the Court could—and ultimately might—strike the separate statements given that

---

[1] Discrete communications seeking or providing legal advice might still be privileged. *See L.A. Cty. Bd. of Supervisors*, 2 Cal. 5th at 297 (noting the importance of the contents of communications). But at least as a first step, production of non-privileged communications regarding Brieant's role as a business agent might inform the question of whether any exception to privilege applies to a more limited set of advice-oriented communications withheld from that production.

7

they were filed in violation of the Civil Local Rules, the Court addresses some of the issues raised in the statements in general terms to provide the parties with guidance regarding how these disputes must be resolved.

Along with the applicability of the crime-fraud exception, the Court discerns from these massive filings a second issue that threads through most of the disputed discovery requests contained therein. The parties appear to be at loggerheads regarding whether Defendants Brieant and her law office have possession, custody, or control, or the legal right to obtain the documents that Plaintiffs have requested. *See A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006). Brieant contends that the material that Plaintiffs seek is within the purview or possession of GP Defendants, where it is not otherwise subject to attorney-client privilege, and that she has already produced all non-privileged documents in her possession, custody, or control. *See, e.g.*, ECF No. 165-2 at 13. The responding party "must do more than merely assert that the search was conducted with due diligence; rather, she must briefly describe the search to allow the Court to determine whether it was reasonable." *Rogers v. Giurbino*, 288 F.R.D. 469, 485 (S.D. Cal. 2012). Though Brieant likely has no legal right to demand documents in the GP Defendants' possession, she and her law office likely have come into possession of some records due to their involvement in the transaction and their work to verify proof of funds and facilitate the inspection of the productions. Accordingly, Brieant must provide Plaintiffs with a declaration that describes with specificity her efforts to review the material that she possesses to determine whether she has responsive records. To the extent that Defendant Brieant does not have additional relevant, responsive, non-privileged material in her control, she must make such an attestation under penalty of perjury. *Rogers*, 288 F.R.D. at 485. Because the threshold issue regarding whether materials are privileged has not been resolved, the Court does not yet set a deadline for Brieant to provide this declaration.

Similarly, Plaintiffs have not met their burden to show that Defendants Brieant or her law office possess or control any of the documents that they seek. After Brieant provides more detailed information regarding her review for responsive, non-privileged records, if Plaintiffs wish to pursue any dispute over her possession of such records, they must provide a specific, detailed

1  explanation of the facts that indicate that Plaintiffs does have possession, custody, or control of the
2  requested non-privileges records for any requests that remain at issue.  But again, the Court
3  declines to set such a deadline at this time while other threshold issues remain to be resolved.

4  The Court may require further briefing or evidentiary submissions to remedy to those
5  issues, but any such instruction will be presented in a subsequent order after the parties address the
6  threshold and procedural questions discussed above.  The parties must limit their supplemental
7  briefs in response to this Order to the three questions addressed above in Part II of this Order.

**IV.   CONCLUSION**

The parties are directed to address each of the three questions identified in Part II above (in whatever order they see fit) in simultaneous briefs to be filed no later than September 24, 2025. Each side shall file a single brief not exceeding six pages.  These briefs must be limited to those three questions.  The parties may attach evidence as necessary, but must specifically cite and discuss any evidence they wish the Court to consider in their briefs.  Evidence filed elsewhere in the record need not be refiled, so long as it is cited by docket entry and page number, and discussed with sufficient specificity to explain its significance.

Pending resolution of this dispute and the ultimate resolution of this litigation, Brieant and her law office are ORDERED to preserve any potentially responsive documents in their custody or control.

**IT IS SO ORDERED.**

Dated: September 17, 2025

LISA J. CISNEROS
United States Magistrate Judge

9