1

2

3

4                           UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    ABN CORPORATION, et al.,                Case No.  23-cv-00004-RFL   (LJC)

8                    Plaintiffs,
                                             **ORDER REGARDING MOTION TO**
9          v.                                **COMPEL**

10   GROUPE PELM INTERNATIONAL                Re: Dkt. No. 162
     CORPORATION, et al.,
11
                     Defendants.
12

13          Plaintiffs move to compel production of documents that Defendants Victoria Brieant and

14   her law office (collectively, Brieant) withheld based on assertions of attorney-client privilege with

15   respect to defaulted Defendants Christian Pellegrini and Groupe PELM International Corporation

16   (collectively, the GP Defendants).  Dkt. No. 162.  Plaintiffs rely primarily on the crime-fraud

17   exception to privilege, and on the GP Defendants' default to establish that exception by admission.

18   The Court held a hearing on September 16, 2025 and thereafter issued an Order for supplemental

19   briefing.  Dkt. No. 174.  Among other issues, the Court directed the parties to address whether

20   Brieant's communications with the GP Defendants were privilege even absent any application of

21   the crime-fraud exception, because it appeared that Brieant acted primarily as a business agent or

22   mere conduit for the GP Defendants' communications with Plaintiffs' and their attorney.  *Id.* at 5–

23   7.[1]  For the reasons discussed below, Plaintiffs' Motion is DENIED WITHOUT PREJUDICE as

24   to communications that specifically seek or convey legal advice, and GRANTED as to all other

25   documents predating this litigation that Brieant withheld based on assertions of privilege.

26          The parties' briefs on the Motion to Compel addressed questions of exceptions to and

27   ─────────────────

28   [1] To present the Court's full analysis of this issue in a single document for the convenience of the
     reader, this Order repeats relevant portions of that previous Order.

waiver of the attorney-client privilege, but did not meaningfully address the underlying question of whether the privilege applies in the first place to the communications at issue. *See, e.g.*, ECF No. 165 (Opp'n) at 9–16. Plaintiffs may have erred in failing to raise this issue, but it is ultimately Brieant's burden as the party invoking the privilege to make a prima facie showing that it applies. *See Costco Wholesale Corp. v. Superior Ct.*, 47 Cal. 4th 725, 733 (2009).

"[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. California law therefore applies to issues of privilege in this litigation, at least absent any showing that the law of some other state should apply. *See Holley v. Gilead Scis., Inc.*, No. 18-cv-06972 JST (JSC), 2021 WL 2371890, at *2 (N.D. Cal. June 10, 2021) (applying California choice-of-law rules to conclude that California privilege law applied in a case with "factual connections to multiple states," where no party introduced evidence of a conflict of laws or another state's governmental interest in applying its own law).

Under California law, the attorney-client privilege is governed by statute and applies to confidential communications between client and lawyer during the course of the attorney-client relationship. *See* Cal. Evid. Code §§ 911, 954, 952. "The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise." *Costco*, 47 Cal. 4th at 733. "Once that party establishes facts necessary to support a prima facie claim of privilege," then the privilege is presumed to apply, and "the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." *Id.*

"[T]o determine whether a communication is privileged, the focus of the inquiry is the dominant purpose of the relationship between the parties to the communication." *Clark v. Superior Ct.*, 196 Cal. App. 4th 37, 51 (2011). Where the "dominant purpose of the relationship between the parties to the communication was one of attorney-client, the communication is protected by the privilege." *Id.* "[T]he relevant inquiry is not the content of the communication but is instead the relationship of the communicators." *Id.* at 52. If "the communications were made during the course of an attorney-client relationship"—as opposed to a relationship with

1    some other "dominant purpose"—then "the communications, including any reports of factual

2    material, would be privileged, even though the factual material might be discoverable by some

3    other means." *Costco*, 47 Cal. 4th at 740.  Even when an attorney-client relationship is

4    established, however, "the inquiry turns on . . . the link between the content of the communication

5    and the types of communication that the attorney-client privilege was designed to keep

6    confidential.  For a communication to be privileged, it must be made for the purpose of the legal

7    consultation, rather than some unrelated or ancillary purpose."  *L.A. Cnty. Bd. of Supervisors v.*

8    *Superior Ct.*, 2 Cal. 5th 282, 297 (2016) (adopting the reasoning of a concurring opinion in

9    *Costco*).

10        "It is settled that the attorney-client privilege is inapplicable where the attorney merely acts

11    as a negotiator for the client, gives business advice or otherwise acts as a business agent."  *Zurich*

12    *Am. Ins. Co. v. Superior Ct.*, 155 Cal. App. 4th 1485, 1504 (2007) (citation omitted).  By merely

13    "conveying the client's position to a contracting party," an attorney "acts as a business agent,"

14    such that neither privilege nor work product protection applies to communications with the client

15    made for that purpose.  *See also Aetna Cas. & Sur. Co. v. Superior Ct.*, 153 Cal. App. 3d 467, 475

16    (1984).

17        Here, Brieant describes her role as follows:

18            By any measure, Attorney Brieant had an exceedingly limited
             involvement in the underlying transaction, which Plaintiffs cannot
19            and do not actually deny. Again, GP and Pellegrini (collectively "GP
             Defendants") retained Attorney Brieant "in this transaction for only
20            two very narrow issues": (1) to verify proof of funds and (2) to
             facilitate communications with Attorney Williams concerning an
21            inspection of the product. [ECF 126-1, ¶ 20.]

22            It was only after GP and RS Medical had already negotiated the terms
             of the Commercial Invoice and, and after Pellegrini confirmed the
23            $50,000 deposit was wired and had cleared into the GP account at
             Scotia Bank on November 15, 2022, that Pellegrini first engaged
24            Attorney Brieant to handle the first item: to contact Attorney Williams
             . . . to verify that RS Medical had the [funds] to complete the
25            transaction.

26    ECF No. 165 at 3–4 (first set of brackets in original; internal quotation marks omitted).  She goes

27    on to explain how that she engaged in further communications with Willaims at Pellegrini's

28    direction.  *Id.* at 4–5.  "Most responses from Attorney Brieant [in an exchange of messages with

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Williams] consisted of informing Attorney Williams that she was merely a conduit for conveying

2    his messages to Pellegrini, and that she was otherwise waiting on instructions from Pellegrini in

3    facilitating the inspection." *Id.* at 4.

4          Based on that description, Brieant's primary role in the transaction appears to have been as

5    a business agent or "mere conduit," not providing legal services.  Despite the Court's previous

6    invitation for the parties to "attach evidence as necessary" to their supplemental filings, ECF No.

7    174 at 9, Brieant included no new evidence with her supplemental brief, ECF No. 179.

8          Instead, she merely asserts that she was not a "negotiator" because the terms of the

9    transaction had already been agreed at the time of her involvement, and that she acted as an "arms-

10   length attorney" based on Pellegrini's previous declaration that he and Brieant "have a method of

11   verifying a buyer's funds" that they "followed . . . here," *id.* at 5 & n.3 (apparently quoting in part

12   ECF No. 109,[2] ¶ 4).  Pellegrini's declaration, in the portion quoted by Brieant, explains that his

13   and Brieant's "method" consisted of "asking the buyer's legal counsel to represent verbally to Ms.

14   Brieant and in a confirming writing (such as an email or text) that the buyer has sufficient clean,

15   clear, liquid, unencumbered and transferable funds of provable noncriminal origin on deposit in

16   the United States and designated for the transaction to complete the transaction."  ECF No. 179 at

17   5; ECF No. 109, ¶ 4.

18         Brieant concedes "that *some* of her communications with Pellegrini—for instance,

19   communications where she was merely passing along messages exchanged with Attorney

20   Williams—may be subject to production," but suggests that Pellegrini's declaration supports a

21   conclusion that her communications were largely privileged.  To the contrary, nothing about

22   Pellegrini's description of Brieant's role indicates that it would have involved the sort of

23   confidential consultations traditionally protected by the attorney-client privilege.  Instead, it

24   appears to confirm that Brieant acted essentially as a conduit or business agent, even if not

25   specifically as a negotiator.

26

27   _____

28   [2] Brieant's brief cites ECF No. 90, which is not a declaration but instead Groupe PELM's third-party complaint against Plaintiffs' attorney Aaron McKown and his law firm, and which does not include the language at issue.

1    Discrete communications seeking or providing legal advice might still be privileged.  *See*

2    *L.A. Cnty. Bd. of Supervisors*, 2 Cal. 5th at 297 (noting the importance of the contents of

3    communications).  It is conceivable, for example, that Brieant might have advised Pellegrini on

4    potential legal significance of Plaintiffs' attorney's representations, and such communications

5    would be privileged (at least absent a showing of an exception).  But the same cannot be said for

6    Brieant and her clients' discussions that related more generally to her communicating with a

7    partner in a putative contract about the source of its funds.  Those discussions relate to a

8    fundamentally business-oriented rather than legal function, and are not privileged.

9        Moreover, given that Brieant's primary role in the transaction appears to have been as

10   business agent or conduit, any background communications between her and her clients about the

11   nature of the transaction or the products at issue also are not privileged, unless made specifically

12   in the context of seeking or providing legal advice.  *See Costco*, 47 Cal. 4th at 735–36 (looking to

13   "the client's dominant purpose in retaining the attorney"); *Clark*, 196 Cal. App. 4th at 51 (looking

14   to the "dominant purpose of the relationship"); *see also Wisk Aero LLC v. Archer Aviation Inc.*,

15   No. 21-cv-02450-WHO (DMR), 2023 WL 2699971, at *4 (N.D. Cal. Mar. 29, 2023) (holding

16   under federal common law that "[n]o privilege can attach to any communication as to which a

17   business purpose would have served as a sufficient cause, i.e., any communication that would

18   have been made because of a business purpose, even if there had been no perceived additional

19   interest in securing legal advice").

20       It appears that Brieant has over-designated documents as privileged based on the

21   unsupported view that her role in the transaction was primary that of an attorney rather than a

22   business agent.  Plaintiffs' Motion to Compel is GRANTED as to all responsive documents

23   Brieant withheld on the basis of privilege, except for: (1) communications that specifically seek or

24   convey legal advice; and (2) documents created after the start of this litigation.[3]  Brieant is

25   ORDERED to produce documents consistent with this Order, and to serve a revised privileged log

---

[3] Brieant previously represented the GP Defendants in this case, thus establishing a traditional attorney-client relationship at that time.  The Court's subsequent determination that she must be disqualified from such representation due to a conflict of interest does not undermine any privilege that attached during that time.

United States District Court
Northern District of California

1    specifically supporting any remaining claims of privilege, no later than November 6, 2025.

2    Consistent with the Court's previous Order, to the extent that Brieant asserts responsive

3    documents are outside of her custody or control, she "must provide Plaintiffs with a declaration

4    that describes with specificity her efforts to review the material that she possesses to determine

5    whether she has responsive records," and if she "does not have additional relevant, responsive,

6    non-privileged material in her control, she must make such an attestation under penalty of perjury"

7    by the same deadline.  *See* ECF No. 174 at 8.

8         This Order does not resolve the question of whether the crime-fraud exception applies to

9    any documents that might otherwise remain privileged—i.e., communications specifically seeking

10   or conveying legal advice.  Plaintiffs' arguments for the crime-fraud exception rest either on

11   relatively thin circumstantial evidence, or on an apparently novel legal argument that a client's

12   default can serve to establish the exception through admission for the purpose of ongoing

13   litigation against that client's attorney.  As a matter of prudence, the Court withholds judgment on

14   those potentially fraught issues until after Brieant has produced documents consistent with this

15   Order, which may either obviate the need for further production or provide a clearer record to

16   determine whether Plaintiffs can establish a prima facie showing of the crime-fraud exception.

17   Plaintiffs Motion to Compel is therefore DENIED WITHOUT PREJUDICE as to communications

18   that specifically seek or convey legal advice, except that Brieant must produce a revised privilege

19   log supporting such claims of privilege.

20        If any dispute remains regarding Brieant's production in response to this Order, her

21   revised privilege log, or Plaintiffs' argument for an exception to privilege, the parties shall meet

22   and confer as required by this Court's Standing Order, and file a further joint discovery letter brief

23   no later than November 20, 2025.

24        That letter must attach the privilege log entries for any documents that Plaintiffs seek

25   compel Brieant to produce despite a continuing assertion of privilege, and may attach any other

26   evidence the parties believe is relevant, so long as the parties specifically cite and discuss in the

27   letter any evidence they wish the Court to consider.  Evidence filed elsewhere in the record need

28   not be refiled, so long as it is cited by docket entry and page number, and discussed with sufficient

United States District Court
Northern District of California

6

specificity to explain its significance

   **IT IS SO ORDERED.**

Dated: October 23, 2025

_____
LISA J. CISNEROS
United States Magistrate Judge